SMITH VS. SHERRY.

*September 4 — September 21, 1880.*

CONSTITUTIONAL LAW.    *(1) Amending town or village charter by special act. (2) Annexing to village detached, uninhabited land.*

1. Under secs. 31 and 32, art. IV of the state constitution as amended in 1871, the legislature has no power, by special act, to amend a special town or village charter granted prior to 1871.

2. An uninhabited tract of country nowhere adjoining an existing village, and in which such existing corporation has no special interest, cannot be made by act of the legislature a part of such village for the mere purpose of increasing the corporate revenues by the exaction of taxes.

APPEAL from the Circuit Court for *Shawano* County.

The case is thus stated by Mr. Justice TAYLOR:

" This is an action to recover damages of the defendant for trespassing upon lands claimed to be owned by the plaintiff, and removing therefrom a large quantity of pine timber. The plaintiff claims title to the lands in question under a tax deed issued to him by the county of Shawano for the non-payment of taxes assessed thereon by the town of Seneca, in said county, in the year 1872. The case was tried by the court, and judgment was rendered in favor of the defendant, solely upon the ground that the town of Seneca had no power to assess any taxes on said lands in the year 1872, for the reason that said lands were at that time a part of the village of Shawano, in said county, and were assessed by said village, and the taxes so assessed thereon by said village were·paid by the owner of said lands.

" In 1872 the legislature passed chapter 92, Laws of 1872, annexing township 28 north, of range 13 east, and township 28 north, range 14 east, to the village of Shawano. The land in dispute was in township 28 north, of range 13 east. These townships were not adjoining to any part of the village of Shawano, as bounded previous to the passage of said act, and

were in fact situated at least six miles distant from the nearest point of said village. The village of Shawano was first incorporated as a village by chapter 244, P. & L. Laws of 1871."

The plaintiff appealed from the judgment rendered against him.

Brief for the appellant by *Hastings & Greene*, and oral argument by *Mr. Hastings.*

The cause was submitted for the respondent on the brief of *Moses Hooper.*

TAYLOR, J. On the part of the appellant it is insisted, *first*, that the act of 1872 is void under sections 31 and 32 of art. IV of the constitution (said sections being an amendment to said article IV, which was ratified by a vote of the people November 7, 1871), and that as a consequence said townships never became a part of the village of Shawano; and *second*, that irrespective of said constitutional amendment the act is void, for the reason that the legislature have no power to annex any territory to a village which does not adjoin such village — that every village must be composed of contiguous territory.

It is urged that the act of 1872, above referred to, violates the provisions of subdivision 9 of sec. 31 of art. IV of the constitution, as amended in 1871. The section of the amended constitution, so far as it relates to this subject, reads as follows: "The legislature is prohibited from enacting any special or private law in the following cases." The ninth and last case is this: "*Ninth.* For incorporating any town or village, or to amend the charter thereof." It is not contended by the learned counsel for the respondent that the act of 1872, which attempted to annex the two townships in question to the village of Shawano, was not a special law within the meaning of the constitutional provision above quoted, or that it was not an amendment of the charter of the village of Shawano. *State v. City of Cincinnati*, 20 Ohio St., 18. But it is said, the

constitutional provision above quoted does not prohibit the amendment of village charters which were granted by the legislature previous to the adoption of the amendments. In support of this position the learned counsel for the respondent cites and relies upon the decision of this court in *Attorney General v. Railroad Cos.*, 35 Wis., 425–561, and does not cite any other. If the case above cited has decided this question in favor of the respondent, the learned counsel very properly relied upon it as controlling this case, and wisely abstained from seeking for or citing authorities from other courts to sustain his position. After carefully considering what was said by the chief justice in his opinion in that case, and the very careful and critical review of so much of the opinion as treats of the question involved in this, by the learned counsel for the respondent, we have come to the conclusion that the reasoning in that case does not necessarily dispose of the question to be determined in this.

In the case of *The Attorney General v. Railroad Cos.*, the court had under consideration subdivision 7 of said section 31 of the amended constitution, and neither quoted nor referred to subdivision 9, which controls this case. Subdivision 7 prohibits the legislature from passing any special or private law "for granting corporate powers or privileges except to cities." Subdivision 9 prohibits the legislature from passing any special laws "for incorporating any town or village, or to amend the charter thereof." The language of the two provisions is not identical, by any means, and does not necessarily require that the same construction should be given to each.

In the opinion in *Attorney General* it is argued that the prohibition against granting corporate powers or privileges, by any special or private act was designed as an amendment of the first clause of section 1, art. XI of the original constitution, and merely took away from the legislature the discretion vested in it by that part of said clause which permitted the legislature to create corporations by special laws when, in

the judgment of the legislature, the objects of such corporations could not be attained under general laws; and that it did not amend the second clause of said section 1, which provides that "all general laws or special acts enacted under the provisions of this section may be altered or repealed by the legislature at any time after their passage." Embodying the seventh subdivision of said section 31 of the amended constitution with section 1, art. XI, as construed by the court in 35 Wis., it would read as follows: "Corporations without banking powers or privileges may be formed under general laws, but shall not be created by special act, except for municipal purposes. All general laws or special acts enacted under the provisions of this section may be altered or repealed by the legislature at any time after their passage."

The language of the chief justice, on page 560, is as follows: "But the purpose of the amendment, so far as it affects section 1, art. XI, appears to us very manifest. It was designed to act on the first clause only of the section, taking away the legislative discretion, and changing the directory provision into a prohibitory one, and not to touch the second clause of the section at all, leaving the reserved power where it found it, to be exercised thereafter upon special charters, by special acts. The amendment is prospective only, not retrospective. It prohibits an old way, and provides a new way, of creating corporations, but was not designed to affect existing corporations in any way." If the ninth subdivision of the amending section 31 had been omitted altogether, it is probable that the amendments would have been construed as not applicable to municipal corporations at all; but, however that might have been, it is now very clear that the legislature, in adopting the seventh subdivision, and the people, in ratifying the same in connection with the ninth subdivision of the section, did not intend that the seventh subdivision should extend to towns and villages. If the general terms used in the seventh subdivision had been intended to prohibit the legislature from

granting corporate powers and privileges to towns and villages by special or private laws, as well as to corporations of a private nature, there would have been no necessity for adding the ninth subdivision, which in express terms prohibits the incorporation of any town or village, or to amend the charter thereof, by any special law. The ninth subdivision, standing by itself, and applicable only to a particular kind of corporations, must receive the construction which its language requires, and which will carry out the intention of the legislature and the people in adopting the same.

The language is of the most general kind. It prohibits the incorporation of a village, or the amendment of the charter thereof, except by general laws. The only question about which there is any dispute is, whether it prohibits the amendment of the charter of a village incorporated by a special law previous to the adoption of the amendment, by a special law passed after its adoption. The language is certainly broad enough to prohibit such amendment. The object of the amendment was to prevent special legislation, and to promote uniformity, so far as possible, in the laws governing the incorporated towns and villages in the state. A very large number of villages had been incorporated in all parts of the state by special laws previous to the adoption of the amendment; a much larger number than will probably be organized for the next twenty-five years. If all these charters remain subject to amendment by special acts, notwithstanding the constitutional prohibition, the object of the provision will be defeated, and the evil sought to be remedied will remain uneradicated. We think the words "or to amend the charter thereof," were intended to prevent the amendment of the charters previously granted to villages by special acts, as well as those organized thereafter under general laws. Whilst it would not be improper to use the word "charter" to designate the organization of a village under a general law, it is much more appropriate to use the word as designating a special law under which a vil-

lage is organized. There is some force, therefore, in the argument that the word "charter," used in the constitution, refers to those acts incorporating villages which had been passed previous to the amendment, as well as those organizations effected under a general law.

The argument used in the *Attorney General v. Railroad Cos.*, that the reserved power in the last clause of section 1, art. XI of the constitution, was not changed by the seventh subdivision of section 31, has no force when applied to the ninth subdivision, both for the reason that the language of the ninth expressly prohibits amendment by special law, and because there is no necessity of invoking the reserved power in said last clause to enable the legislature to repeal, amend or alter the charter of a village or city. Although the language of the last clause of section 1, art. XI, is very general, and would cover special and general acts for the incorporation of cities and villages as well as corporations of a private nature, it is reasonable to suppose that the framers of the constitution placed it there to protect the people against irrevocable grants to corporations of a private character, and not as a means of saving to the legislature the power of amending, altering or repealing charters of cities and villages, which it would undoubtedly have without any such saving clause in the constitution or the law creating the same. The argument, therefore, used for holding that charters of corporations of a private character created by special laws previous to the adoption of the amendment of the constitution in 1871, may be amended by special acts after such constitutional amendments were adopted, under the reserved power in the last clause of section 1, art. XI, has no force when applied to the ninth subdivision of the amendment.

The language of the amendment is sufficiently broad to prevent any amendment of previous special charters by any special law, and as the evil intended to be corrected by the amendment can only be eradicated by preventing all amend-

ments of the charters of villages by special laws, we hold that the law in question is void. This view of the case is fully sustained by the authorities cited by the learned counsel for the appellant, some of which we here cite: *State v. Cincinnati, supra; People v. Bennett,* 29 Mich., 451; *Van Phul v. Hammer,* 29 Iowa, 222; *Pell v. Newark,* 40 N. J. Law, 71; *People v. Cooper,* 83 Ill., 585; *State v. Mitchell,* 31 Ohio St., 592; *McGregor v. Baylies,* 19 Iowa, 44, 49; *City of Wyandotte v. Wood,* 5 Kansas, 603; *In re Pet. of Gil. Elevated Railway Co. v. Kobbe,* 70 N. Y., 361, 369. We are also informed that the view we have taken of this case has been held by at least two of the governors of this state, who have filled the executive chair since the adoption of the constitutional amendments in question, as well as by their constitutional advisers, and their opinions have been, as a general rule, respected by the legislature, and very few special laws amending village charters have been passed since their adoption. In the case of *Kimball v. Rosendale,* 42 Wis., 407, 416, there is evidently a clerical or typographical error in the reference made in the opinion to the ninth clause of the amendment, on page 416. This is evident from what immediately follows such reference, as the quotation which follows the reference is from the seventh instead of the ninth clause, and the reference was evidently intended to be to the seventh clause, instead of the ninth.

Without determining whether the annexation of territory to an existing village not contiguous to or joining it, and in which the existing corporation has no interest, thereby subjecting such separate territory to the payment of village taxes, is directly or indirectly a violation of section 1, art. VIII of the constitution, which provides that "the rule of taxation shall be uniform, and taxes shall be levied upon such property as the legislature shall prescribe," we think there is great force in the proposition stated by Judge Cooley, in his work on Constitutional Limitations, 504, that "the legislature can-

Smith vs. Sherry.

not arbitrarily include within the limits of a village, borough or city, property and persons not properly chargeable with its burdens, and for the sole purpose of increasing the corporate revenues by the exaction of taxes." And we hold that where the territory so attempted to be included in a village is not adjacent or contiguous thereto, and the village has no interest therein as a village, its annexation for the mere purpose of increasing the corporate revenues by the exaction of taxes is an abuse and violation of that provision of section 3, art. XI of the constitution, which provides that "it shall be the duty of the legislature, and they are hereby empowered, to provide for the organization of cities and incorporated villages." The idea of a city or village implies an assemblage of inhabitants living in the vicinity of each other and not separated by any other intervening civil division of the state. We do not by this decision intend to set bounds to the discretion of the legislature in fixing the boundaries of a village, so long as the territory of which it is composed is adjacent or contiguous, nor to intimate that the legislature may not incorporate as one village two or more assemblages of inhabitants living at some distance from each other, with spaces of uninhabited lands intervening, when such intervening spaces are also included in such village, but that a village cannot be incorporated containing two or more tracts of territory not contiguous or adjoining, and separated by some other civil subdivision of the state, and especially that an uninhabited and separate tract of country cannot be annexed to or made a part of an incorporated village. If by an act of the legislature a tract of country not inhabited, and not adjoining a village, can be made a part of such village, then it would seem to follow that by another act of the legislature the inhabited part of such village might be separated therefrom, and we should have the anomalous thing of a village without inhabitants, and composed simply of a tract of territory, which would be an absurdity.

Although the other members of this court do not concur, I am not prepared to say that there are no circumstances under which a tract of country separated from an incorporated city or village can be made a part thereof. Probably the legislature would have the power to make a tract of land used as a cemetery, a public park, water-works, a poor-house, or other charitable institution, by the inhabitants of a city or village, a part of such city or village, although such cemetery, etc., were separated therefrom. The interest which the inhabitants of the city or village have in the tract of land, in such cases, might render it proper to subject it to the government of the city or village using the same. These cases and similar ones might be exceptions to the general rule above stated. It is unnecessary to discuss this point further, as the first point disposes of the case in favor of the appellant, and because a like question applicable to towns is decided by this court in the case of *The C. & N. W. R'y Co. v. The Town of Oconto, ante,* p. 189; and the opinion in that case is referred to for other reasons, stated at length, which control the opinion of the court upon this point in this case.

*By the Court.*— The judgment of the circuit court is reversed, and, as the findings of the circuit court do not pass upon all the issues in the case, the cause is remanded and a new trial ordered.