## HUDSON V. CITY OF DENVER.

1. MUNICIPAL CORPORATIONS — CHARGES OF FRAUDULENT ACTION — MOTIVES INQUIRED INTO.— Where the action of municipal corporations is expressly or impliedly authorized by statute, the courts will in general only inquire into the motives prompting such action where fraud is charged and the party complaining claims to have been injured thereby.

2. POLICE DEPARTMENT — DISMISSAL OF OFFICERS.— The city council of Denver adopted a resolution honorably discharging eighteen policemen, the resolution reciting that it was a measure of economy, and to secure increased efficiency in the department. At the same session a resolution was adopted to add to the police force twenty patrolmen. The city council were authorized to reduce or increase the police force whenever deemed advisable. *Held,* that one who was discharged in pursuance of the first resolution, and was not subsequently employed under the resolution increasing the force, could not by tendering his services, which were not accepted, recover salary as a member of the police force, on the ground that his attempted removal was fraudulent, contrary to law, and void, in the absence of declarations or acts of the city council, or any of its members, or other evidence than the official action taken, tending to show bad faith on the part of the council in his discharge.

*Error to District Court of Arapahoe County.*

PLAINTIFF in error, Stephen G. Hudson, was plaintiff below. He was a member of the regular police force of the city of Denver on January 15, 1884. At that date plaintiff was removed from his said position upon the police force. About ten months thereafter he brought

this suit for the purpose of recovering salary during that period, though his tender of services was not accepted; relying upon the proposition that the proceeding attempting his removal were fraudulent, contrary to law, and void. The meeting of the council at which plaintiff was discharged from the police force was a special session called for the purpose, among other things, of considering a report of the police committee in relation to a reduction of the police force, and to take such action thereon as might be deemed proper. The police committee made the following report:

"DENVER, January 15, 1884.

"*To the Mayor and City Council of Denver:* The committee on police respectfully report that the question of a re-organization of the police of this city has been carefully considered, and as a measure of economy and means of promoting efficiency therein, recommend the passage of the following preamble and resolution: ' Whereas, a re-organization of the police force is believed to be a necessity in order to secure increased efficiency; and whereas, as the salary roll of the police department is largely in excess of the amount warranted by the appropriations for the present year, a reduction in the number should be made: Resolved, that the mayor be, and he is hereby, authorized and required to discharge and drop from the roll all special officers now employed, and further to reduce the expenses of the police department by a reduction of the regular force to twenty men, exclusive of the chief, and that the regular force, until otherwise ordered by the council, shall consist of two sergeants, two roundsmen and sixteen patrolmen; that this reduction shall be without prejudice to any one who may by the operation of this resolution be discharged and dropped from the police rolls. Resolved, further, that the board of police shall without delay report the names, not exceeding twenty, now upon the regular force, for retention, subject to the action of this council, and the re-

maining eighteen shall be honorably discharged and dropped from the rolls of this department.' "

Which report, preamble and resolutions were unanimously adopted. Thereafter, and, so far as appears from the record, at the same meeting of the council, the following resolution was offered and unanimously adopted: "Resolved, that there be added to the regular police force of the city of Denver twenty patrolmen, and the mayor be requested to forthwith present the names of suitable persons for the confirmation of this council." The two resolutions were complied with by the board of police and mayor respectively. Plaintiff was one of the number discharged in reducing the force, but not one of the number subsequently employed in increasing the force.

Mr. L. B. FRANCE, for plaintiff in error.

JAMES H. BROWN, city attorney, and Messrs. BARTELS & BLOOD, for defendant in error.

PER CURIAM. As a rule, the judicial branch of the government will not institute an inquiry into the motives controlling action by the legislative bodies of municipal corporations. If the particular action in question is expressly or impliedly authorized by statute, the courts will in general only inquire into the motives prompting it where fraud is charged and the party complaining claims to have been injured thereby (1 Dill. Mun. Corp. 3d ed. § 311); and, it is hardly necessary to add, the investigation in such cases will only be made in proceedings properly instituted and with the proper parties.

The statute authorizes the city council of Denver to discharge policemen whenever in its judgment a reduction of the force is deemed advisable. It clearly appears from the preamble and resolutions adopted that such reduction was made in pursuance of the statute authorizing it; and, under the circumstances of this case, we are

not permitted to question the motive of the councilmen in the action taken. True, they afterwards appear to have changed their minds, for at the same meeting they adopted a resolution increasing the police force; but we do not agree with counsel in the proposition that such action alone is sufficient to sustain plaintiff's right to recover either salary or damages. No testimony was tendered showing, or tending to show, declarations or acts of the city council, or any of the members thereof, other than the official action taken at the special meeting when plaintiff was discharged; nor was any other evidence of bad faith introduced or offered. This we cannot consider as sufficient to establish plaintiff's proposition that that body disobeyed the law, and were guilty of fraud in the premises. The council were not merely authorized to reduce the police force; they also possessed the power to increase the same when in their judgment such increase became necessary. It is not for us to say that no exigency arose requiring a sudden and speedy increase of the police force; neither can we question the right of the councilmen to change their minds regarding the matter; nor is it our province to fix a period that must elapse after a reduction of the force before it may be lawfully increased. The presumption is that the city council acted honestly, and according to that which in their judgment was for the best interests of the city. And the proceedings recited by the record before us are not sufficient to overcome this presumption.

The case of *State v. Schumaker*, 27 La. Ann. 332, does not, as we understand it, necessarily conflict with the foregoing view. In that case the municipal action recited in the opinion was a notice to relator by the clerk of the metropolitan police board "that he was honorably discharged under the provisions of section 3, act No. 60, Acts of 1874, and Dr. Schumaker was appointed in his place." Thus it appeared that the board misunderstood the statute. They were authorized by the statu-

tory provision mentioned to remove relator for the purpose of reducing the force; they could not discharge him for the purpose of employing Dr. Schumaker "in his place." The judgment of the court below will be affirmed.

*Affirmed.*

ELLIOTT, J., not sitting, having tried the case below.