THE CITY OF DENVER ET AL. v. COULEHAN.

1. MUNICIPAL BOUNDARIES—LEGISLATIVE AND JUDICIAL POWER.
The legislature of this state does not have the power to extend or enlarge the territorial limits of a specially chartered town or city by adding thereto noncontiguous lands—that is, lands entirely separated from

the municipality by intervening territory; and the courts may de-
clare the annexation of such noncontiguous territory invalid and
enjoin the collection of municipal taxes upon the property thus
sought to be annexed.

2. CONSTITUTIONAL LAW.

The "Act to Revise and Amend the Charter of the City of Denver,"
Sess. Laws, 1893, p. 131, containing a provision for the annexation of
noncontiguous territory, not being germane to the subject-matter
of the original municipality, is, as to such provision, obnoxious to
sections 21, art. 5, of the constitution.

3. SAME.

The operation of the act, as well as its form and its words, must be
looked to to determine the constitutionality of the measure.

4. MUNICIPALITIES—GENERAL AND SPECIAL LAWS.

Towns and cities incorporated under the general laws cannot be forced by
a special law involuntarily to surrender their powers and privileges.

*Appeal from the District Court of Jefferson County.*

ACTION to enjoin the assessment, levy and collection of
taxes upon certain property in Jefferson county by or for
the use of the city of Denver.  Trial and judgment in favor
of plaintiffs, granting the perpetual injunction as prayed for.
Defendants appeal.

The complaint is very lengthy.  The following extracts
will be sufficient for an understanding of the opinion :

"The plaintiff, suing as well for the behalf of all other
owners of taxable property situate within the district of lands
aforesaid, similarly situated, as for himself, complaining, saith
that plaintiff is and for twenty years and more last past hath
been the owner of those certain premises described as the
northeast quarter of section twenty-three (23), township
three (3) south of range sixty-nine (69) west. * * *

"That by a certain act of the general assembly of the state
of Colorado approved on the third day of April, A. D. 1893,
entitled 'An Act to Revise and Amend the Charter of the
City of Denver,' it was and is provided among other things
that the corporate limits of the said city of Denver should
begin, etc. (description, including lands of plaintiff), * * *
excepting, however, out of the said city, as so established,

all towns and cities incorporated and then existing under the general laws of the state, situate within said last mentioned boundaries.

*    *    *    *    *    *·    *    *

" Plaintiff further avers that the plaintiff's land hereinbefore described and all of the lands hereinbefore mentioned, situate in the said township three (3) south, of range sixty-nine (69) west, and township four (4) south, of range sixty-nine (69) west, are and always have been included within the limits of the said county of Jefferson.    That the said lands of the plaintiff are agricultural lands, and now are and for many years last past have been by plaintiff planted and cultivated for the rearing of grasses, small grains and small fruits ; that the said lands are valuable only as agricultural lands ; that the same are not and never have been divided into streets, alleys, lots, blocks or out-lots, nor doth plaintiff propose or intend, nor hath plaintiff ever proposed, intended or desired to so subdivide the same into parcels, or sell or expose the same to sale as urban or suburban property, nor are the same valuable for such purpose ; that no public buildings or other improvements have ever been erected or made by the said city of Denver upon or within three miles of said lands of plaintiff, or said district of lands aforedescribed, situate in said county of Jefferson ; that none of the public streets or· alleys of the city of Denver extend into or near to the same or any part thereof, or into or within two miles of any part of the said district of lands aforedescribed ; and that neither light, heat, police protection, water nor other convenience or public service, furnished by or under authority of the city of Denver for the benefit of the inhabitants thereof, hath ever been extended or afforded to plaintiff or any of the people residing within the said district; nor doth or can plaintiff or the other owners of land situate within the said district have any benefit, advantage or convenience whatsoever of the government of the said city of Denver, or any department thereof ; nor are the said lands of plaintiff, nor any of the land situate within the district aforesaid (in range sixty-nine [69] afore-

said) necessary to be added to the city of Denver for opening streets or ways between other parts of the said city of Denver or for any other municipal purpose whatsoever, and that the whole purpose of the city of Denver and those active in and about procuring such enlargement of the bounds of said city, was and is to enable the authorities of the said city of Denver to levy taxes upon the lands and other taxable property within the said district for raising moneys for discharging the current expenses of the said city and for discharging the principal and interest of the bonded indebtedness of the said city hereinafter mentioned.

\*    \*    \*    \*    \*    \*    \*    \*

" Plaintiff further avers that the said district of lands in every part thereof was, at the date of the passage of the said act, and still is, separated from the bounds of the said city of Denver as established prior to the passage of the said act, by a distance of two (2) miles or more and by certain municipal corporations theretofore and now still existing, to wit, the town of North Denver, the town of Highlands, the town of Colfax and the town of Barnum, all which, as plaintiff on information and belief avers, at the date of the passage of the said act and for many years before that were and still are municipal corporations lawfully organized and existing under the laws of the state of Colorado.

\*    \*    \*    \*    \*    \*    \*    \*

" Plaintiff is advised by counsel and therefore avers that the attempt made by the said enactment to include the said district of lands within the limits of the city of Denver solely for subjecting the same to taxation for the purposes of the said city of Denver, and the attempt by the said enactment to subject the said lands to the burden of the indebtedness heretofore contracted by the said city of Denver for loans as hereinbefore mentioned, and the other indebtedness of the said city of Denver, was beyond the authority of the general assembly and wholly without effect; nevertheless plaintiff saith the city council of the said city of Denver threatened to and will levy upon the lands situate in said district, includ-

ing the lands of plaintiff hereinbefore described, taxes for city purposes to an amount not exceeding the limit in the said act provided, to wit, ten mills on the dollar upon the assessed value of said property, and cause the said levy to be certified to the county clerk of the said county of Jefferson, and the said John Vivian, who is the county clerk and recorder of the said county of Jefferson, threatens to and will, unless restrained by the writ of injunction hereinafter prayed, extend the same upon the tax lists of the said county of Jefferson for the now current year and every year hereafter in the manner directed in the said act, and include the said city taxes in his warrant to the county treasurer of the said county of Jefferson, and the said Robert E. Jones, who is the county treasurer of the said county of Jefferson, will, unless restrained as aforesaid, proceed to levy and collect the said taxes, either by sale of plaintiff's lands aforedescribed or by distraint of sale of plaintiff's personal property, and plaintiff avers that the taxes so levied and assessed as aforesaid will be a cloud on the lands of plaintiff and all other lands situated within the district aforesaid, whereupon such taxes shall be levied and assessed as aforesaid, and the levy and assessment of such taxes from year to year in every year hereafter, as the said city of Denver proposes and threatens to do, will be a continuous and constantly recurring injury irreparable by any action at law.

" Plaintiff therefore, as well for and on behalf of the owners of other taxable property within the said district, similarly situated, as for himself, prays judgment that the said city of Denver and the said city council thereof, and all and singular the officers, agents and servants thereof be strictly restrained and prohibited from levying upon the lands aforedescribed or the other taxable property within the said district, or other lands or taxable property similarly situated to the lands and taxable property of plaintiff aforedescribed within the said district, any assessment or tax whatsoever to meet the expenses of said city of Denver, or for other purposes whatsoever, and from causing any such levy to be

certified to the county clerk and recorder of said county of Jefferson; that the said county clerk and J. A. Ferris, assessor, as well as their successors in office, be likewise restrained and enjoined from levying or extending any such tax upon the tax list of the said county of Jefferson in any year, and from including any such taxes in any warrant to the county treasurer of said county, and that the said county treasurer and all and singular his successors in office, be in like manner strictly restrained and enjoined from collecting or assuming to collect any such city taxes of the city of Denver, at any time levied or assessed upon or against any such lands or other taxable property within the said district, and that plaintiff may have such other and further relief or such different relief as to the court shall seem meet, and his costs."

Mr. A. B. SEAMAN and Mr. L. K. PRATT, for appellants.

Messrs. WELLS, TAYLOR & TAYLOR, for appellee.

MR. JUSTICE ELLIOTT delivered the opinion of the court.

The city of Denver was organized and existing under and by virtue of a special charter long before and at the time of the adoption of our state constitution. The constitution did not abrogate such charters, nor does it exempt them from legislative amendments. Constitution, art. 14, sec. 14; also, art. 15, sec. 2; *Brown v. City of Denver*, 7 Colo. 305; *Carpenter v. The People ex rel.*, 8 Colo. 116.

On April 3, 1893, the general assembly of Colorado passed "An Act to Revise and Amend the Charter of the City of Denver." See Session Laws, 1893, p. 131. Prior to the passage of that act, the territorial limits of the city were wholly within the county of Arapahoe. Jefferson county bounds Arapahoe on the west; but between Jefferson and the western limits of the city of Denver there were at the time of the passage of the act above mentioned several municipal corporations, viz.: the town of North Denver, the town

of Highlands, the town of Colfax, and the town of Barnum. The territorial boundaries of these municipalities for the most part extended to the Jefferson county line, and so separated the city of Denver from that county. In fact, at the time of the passage of the act to revise and amend the Denver charter, no part of the territorial limits of the city of Denver was contiguous to any part of Jefferson county. Nevertheless, by the terms of said act it was attempted to enlarge or extend the limits of the city of Denver by adding thereto a strip of land, five and one half miles long by one and one half miles wide, lying along the eastern border and wholly within the county of Jefferson.

If the act adding the Jefferson county strip to the city of Denver be upheld as valid, there might, perhaps, be no escape from the taxation complained of in the present action. The decisions exempting certain property within the territorial limits of a town or city from municipal taxation, on the ground that the property is so situated that it cannot receive its due proportion of municipal benefits, are strongly combated on the ground that the doctrine they assert is illogical as well as impractical, in that it amounts to a substitution of judicial opinion for legislative judgment in matters peculiarly within the province of the lawmaking power. See, upon this subject, Cooley's Const. Lim., (6th Ed.), p. 616, note 3, and cases there cited; also, 2 Dillon's Mun. Corporations, (4th Ed.), secs. 794, 795, and notes. But it is unnecessary to decide this point.

In determining the present controversy we shall endeavor to reach a proper solution of the following question: Has the legislature the power to extend or enlarge' the territorial limits of a specially chartered town or city by adding thereto noncontiguous lands—that is, lands entirely separated from such town or city by intervening territory?

It is customary to speak of the power of the legislature over municipal corporations as *plenary*. But this, like most attempts at epigrammatic statements of the law, must be taken *cum grano salis*. Certain it is that constitutional limi-

tations must always be observed in respect to such legislation; besides, insurmountable obstacles may arise out of the nature and subject-matter of the legislation to render the same ineffectual.   In general, the boundaries of a specially chartered town or city may, by act of the legislature, be extended and enlarged so as to include additional lands, the property thus added becoming subject to municipal taxation and entitled to municipal benefits.   It is urged that power thus vested in the legislature is subject to abuse or improvident use.   This may be true; and yet it does not necessarily follow that the courts can restrain the enforcement of a legislative act merely because the legislature acted improvidently in passing it. Before the courts will restrain the enforcement of a legislative act, it must appear beyond reasonable doubt that the legislature in passing the act exceeded its power, or attempted to exercise a power it did not possess.   *Wadsworth v. U. P. Ry. Co.*, 18 Colo. 612.   The improvident use of power by the legislative department of the government does not justify usurpation by the judicial department.   The remedy for the improvident use of official power is by appeal to the people, whose will, when legally expressed under the constitution, is sovereign over all departments.   It is true that all remedies for maladministration in civil government may fail, because all governmental agencies must be intrusted to minds subject to human infirmities.   In such case, we can only suffer and wait while we strive for improvement.   *Martin v. Dix*, 52 Miss. 53; *Turner v. Althaus*, 6 Neb. 54.

Is there, then, in the present case, no check that can curb the vaulting ambition of a great city in its efforts to enlarge its corporate boundaries and increase its corporate revenues? Has the legislature such transcendent power in respect to territorial additions to specially chartered towns and cities that the courts can give no relief?   Is there nothing left but an appeal to the people as the dernier resort?   The answer to these questions must depend upon the nature and scope, as well as the subject-matter, of the legislative act in question.

As we have seen, the general rule is that the legislature

has the power to extend the boundaries, and thus enlarge the territorial limits, of a town or city existing under special charter. But may the legislative arm be extended as a great pothook into any and all the counties of the state, there to encircle, as in this case, many square miles of the territory of such outside counties, and make the same part and parcel of the city of Denver? May the legislature do this, without annexing any intervening territory, and without providing even a street or an alley to connect such outlying municipal additions to the city proper? It may be said that this is an extreme illustration; but, as was once said by Chief Justice Shaw, "it is necessary to put extreme cases to test a principle."

What is a city? With much research into the historical derivation of the word, Webster, preëminently the lexicographer of the law as well as the common people, defines a city in substance as follows: (1) A large town; (2) a corporate town; in the United States, a town or collective body of inhabitants, incorporated and governed by a mayor and alderman; (3) the collective body of citizens, or inhabitants of a city.

Since a city is a large town, we look for the meaning of the word town. Again, we find from Webster that the primitive idea of a *town* was an *inclosure*. The popular use and meaning of the word is a large, closely populated place, whether incorporated or not, as distinguished from the country, or from rural communities. These definitions are sustained and amplified by the Century Dictionary.

The legal as well as the popular idea of a town or city in this country, both by name and use, is that of oneness, community, locality, vicinity; a collective body, not several bodies; collective body of inhabitants,—that is, a body of people collected or gathered together in one mass, not separated into distinct masses, and having a community of interest because residents of the same place, not different places; hence, locality, not localities; vicinity, vicinage, near, adjacent, not remote. So, as to territorial extent, the idea of a

city is one of unity, not of plurality; of compactness or contiguity, not separation or segregation.

Legislative acts in the matter of extending the boundaries of municipal corporations are to be interpreted and applied according to the essential nature as well as the subject-matter of such legislation. In the nature of things, there must be some limit to legislative power. For example, the legislature cannot extend the municipal boundaries of a city into another state. Legislative acts upon such a subject would have no extraterritorial force. There are some things that in their. very nature cannot be accomplished by any human power; a thing cannot be made to exist as a whole and in broken disjointed fragments at one and the same time; a thing essentially single in its nature cannot have a plural existence.

Every municipality must have its territorial *corpus* in which to exercise its corporate functions and powers. Such *corpus* may be enlarged or diminished by the action of the legislature. So the human body may grow or diminish by the action or nonaction of its vital forces; but neither the human body nor the municipal *corpus* loses its identity, its individuality, or its unity, by such growth or enlargment. It is a misnomer—a solecism—to speak of a growth of the human body not connected with the body itself; such a growth is, in fact, *not of the body*. So, territory not in fact connected with, or adjacent to, a city, cannot be regarded as a part of the municipal *corpus*, or as an addition thereto, in any true sense of the term.

Analogous questions have been considered by the Wisconsin supreme court. *The Chicago & N. W. Ry. Co. v. Town of Oconto*, 50 Wis. 189; *Smith v. Sherry*, 50 Wis. 210. In the latter case Mr. Justice Taylor said:

" We do not by this decision intend to set bounds to the discretion of the legislature in fixing the boundaries of a village, so long as the territory of which it is composed is adjacent or contiguous, nor to intimate that the legislature may not incorporate as one village two or more assemblages of inhabitants living at some distance from each other, with

spaces of uninhabited lands intervening, when such intervening spaces are also included in such village, but that a village cannot be incorporated containing two or more tracts of territory not contiguous or adjoining, and separated by some other civil subdivision of the state, and especially that an uninhabited and separate tract of country cannot be annexed to or made a part of an incorporated village. If by an act of the legislature a tract of country not inhabited, and not adjoining a village, can be made a part of such village, then it would seem to follow that by another act of the legislature the inhabited part of such village might be separated therefrom, and we should have the anomalous thing of a village without inhabitants, and composed simply of a tract of territory, which would be an absurdity."

From careful investigation and consideration it is evident that it was never contemplated by the law that the territorial limits of a town or city might include distinct, disjointed fragments or parcels of land, situate miles and miles distant from each other, and separated from the city proper by intervening territory. It is not to be understood from this that a city may not be formed from territory lying on different sides of a natural stream. Nor must anything in this opinion be construed as intimating that noncontiguous territory may be added to a city by connecting the same by a narrow street or alley. Annexation sought to be accomplished by such means might bear upon its face such earmarks of fraud as would vitiate an ordinary transaction; though we do not intimate that judicial inquiry may extend to the motives of a coördinate department of the government. *Kountze v. City of Omaha*, 5 Dillon (C. C. Rep.) 443; *Kelly v. City of Pittsburgh*, 85 Pa. St. 170; *People ex rel. v. Martin & Orr*, 19 Colo. 565; *Hudson v. City of Denver*, 12 Colo. 157.

In *City of Galesburg v. Hawkinson*, 75 Ill. 158, it is said that the boundaries of municipal corporations can be altered and changed by the legislature in its discretion, and that the authorities are all that way. The opinion, however, significantly adds:

" Courts may determine what are the corporate limits already established; they may determine whether what is claimed by the municipal authority to be the corporate limits is so or not, and they may inquire whether the legislative authority has exceeded the powers with which it is invested; but all this implies an existing law, applicable to the particular subject, and the inquiry is, what is the law, and has it been violated or complied with?"

Counsel for appellant relies upon the following from an eminent text writer: "Not only may the legislature originally fix the limits of the corporation, but it may, unless specially restrained in the constitution, subsequently annex, or authorize the annexation of, contiguous *or other* territory, and this without consent, and even against the remonstrance, of the majority of the persons residing in the corporation or on the annexed territory." 1 Dillon's Mun. Corp., (4th Ed.) sec. 185.

The words " or other," in the foregoing extract, are not italicised in the published volume. The leading case cited in support of the text is *Blanchard v. Bissell*, 11 Ohio St. 96. That case was one wherein it was sought to annex an unincorporated village to the city of Toledo. It was objected that the territory sought to be annexed was not in fact contiguous to the city of Toledo. The opinion shows:

" That the center of the Maumee river formed the southeastern boundary of the city of Toledo. That the annexed territory (consisting of an unincorporated village called Yondota) is situated on the southeastern side of the river, in a bend running up near to the heart of the city, and that all of it is nearer to the center of business and valuable property than many other portions of the original city territory. That the river is navigable, and where it formed said original boundary, is of unequal width, but for half a mile or more, does not exceed one fourth of a mile in width, and has been permanently bridged for railroad purposes, and may be bridged for other purposes. That Yondota depended mainly

upon the influence of business and improvements in Toledo for its growth and importance.

"The transcript of the annexation proceedings, and the accompanying map, show that the annexation consists in an extension of the original boundaries, so as to include the whole of the river and a considerable tract of land on its southeast side. There is no territory intervening between that which was annexed and the original city limits. All the parts of the annexed territory are in immediate contact with each other; and the whole is in direct contact for several miles with the original boundary. Contiguity cannot import more than immediate contact; and we think the objection founded on a want of contiguity is not well taken."

It is clear that the *Toledo Case* in no way militates against the views we have expressed, but rather confirms them; none of the other cases cited by counsel sustain the view that noncontiguous territory may be added to, and made part of, a town or city; hence we conclude that the text of Judge Dillon, above quoted, cannot be accepted as correct to its full extent and import. The dearth of authority upon this point leads to the belief that legislatures have seldom, or never before, attempted to annex to an incorporated town or city territory so clearly noncontiguous as in the present instance.

It was argued orally that while the legislature may not have the power to *annex* distant noncontiguous territory by a direct act for that purpose, yet in this case the Jefferson county strip must be regarded as a part of the city of Denver for the reason that it is included in the boundary surveys as specified in the revised and amended charter, and that, unless so included, the city has no boundary lines, particularly on the west. This argument is without force. Equity looks to the substance rather than the form; it regards the result of an act rather than the mode of accomplishing it. There may be a wrong way of doing a right thing, but there is no *right* way of doing a *wrong* thing. An act essentially wrong does not become right by the manner of doing

it. If the mode of making municipal additions as argued by counsel were to be upheld, any noncontiguous territory, however remote, might be *surveyed in*, and thus become attached to and made a part of the city. The conclusion at which we have arrived need not disturb the boundary lines of the city as established by the amended charter, except on the west. As to these, the city limits must end where the insurmountable obstacles—that is, the territorial limits of the intervening municipalities—begin.

For the reasons stated, we are clearly of the opinion that the legislature did not have the power to extend or enlarge the territorial limits of the city of Denver by adding thereto the noncontiguous strip of lands situate in Jefferson county, and that the district court did not err in restraining the collection of taxes by or for the use of the city of Denver upon such Jefferson county property. This conclusion being decisive of the present controversy, other questions sought to be raised upon this appeal need not be discussed. The judgment of the district court is accordingly affirmed.

*Affirmed.*

## ON PETITION FOR REHEARING.

PER CURIAM. Counsel for appellants have presented an elaborate argument in support of their petition for a rehearing. Their contention is that since the constitution allows legislative amendments to special municipal charters, and does not expressly forbid the annexation of noncontiguous territory, therefore, under the power of amendment, the legislature may annex to a specially chartered town or city, territory located in any part of the state, however disconnected and remote the same may be from the city to which it is sought to be annexed. Counsel earnestly contend that any question concerning the legality of such annexation is a matter for legislative, and not for judicial, determination.

This view was thoroughly considered when the former opinion was announced. We were aware of the decisions by this court sustaining the power of the legislature to amend

special municipal charters.   Without discrediting such decisions as have been made upon this subject, we have felt constrained to say that it was never contemplated to give the legislature the power, under the guise of amendments, to make such radical and unheard of changes in specially chartered towns or cities as the annexation of territory entirely disconnected and remote from the original municipality. Such annexation would be foreign to the subject-matter of the original municipality, and hence not a proper subject of amendment; and the provisions therefor would not be germane to the one general subject of the act or clearly expressed in the title, as required by section 21 of article 5 of our constitution.   There can be no doubt that the term town or city was used in the constitution in its ordinary signification, as denoting a single parcel of compact or contiguous territory, and not as including several distinct parcels of land situate at remote distances from each other.   The idea of a town or city is that of unity, not plurality.   Hence we have felt constrained to say that a thing essentially single cannot, by legislative act, be given a plural existence, especially where the legislative power over such subject is the power to amend rather than the power to change its essential character.

There are several specially chartered municipal corporations in this state whose charters are subject to legislative amendments; but may the legislature, under the guise of amending these charters, add a section of land in Weld county to Central City, another section in El Paso to Georgetown, another section in Las Animas to Black Hawk, another section in Gunnison valley to Denver, thus dotting the state over with municipal cases, at the discretion of the legislative department?   We are of opinion that it is within the province of the judiciary to give the power of amendment in such cases a reasonable construction; and if the legislature does not restrict itself to proper limits in exercising such power, the courts must exercise proper control over the subject.

In their argument upon the petition for a rehearing, coun-

sel for the appellants challenge the court to point out the particular provision of our constitution which inhibits the legislation complained of. From what we have just said it follows that the provision for annexation of noncontiguous territory—not being germane to the subject-matter of the original municipality—is obnoxious to section 21 of article 5. In addition to this, if the effect of this act in its practical operation be practically, though indirectly, to destroy and annul the corporate existence of these intervening municipalities, then under the decision of this court, *In re Extension of Boundaries of the City of Denver*, 18 Colo. 288, it can be said that this provision violates the spirit of section 13 of article 14 of our constitution, which enjoins upon the legislature the duty to "provide by general laws for the organization and classification of cities and towns." See, on this point, *Smith v. Sherry*, 50 Wis. 210. One of the purposes of this "Act to Revise and Amend the Charter of the City of Denver" was to extend the boundaries of the city, and this extension must have been designed either to provide the necessary territory for the growth and development of an enterprising city, for legitimate purposes of revenue, or some other proper municipal purpose; or else it must have been to accomplish by indirection what could not be done directly, viz., to annul these intervening corporations, or to cripple them and deprive them of some of the privileges and powers which they possess under the general laws, and so force them, unwillingly, into the city of Denver.

The section of said act which we held in the above cited case to be in conflict with said section 13 of article 14 expressly provided for the disincorporation of these municipalities, and proposed to include them within the limits of the city of Denver as thus extended. In said case we held that by a special act of the legislature, such as this confessedly is, the boundaries of the city of Denver could not be so enlarged as to include therein other municipalities incorporated under the general laws of the state; the reason given, *inter alia*, being that this would by special law disincorporate such exist-

ing corporations organized under the general incorporation laws ; and that section 13 must be held to extend to the disincorporation, as well as to the incorporation, of such cities and towns.

If it be said that the objection pointed out *In re City of Denver*, *supra*, to the legislation embodied in the question submitted by the house of representatives, does not apply to the section now under consideration, our reply is, that although the two provisions are not literally the same, yet the evident object aimed at by both is the same, and the practical effect and *operation* of both will be the same. It is true that the section under consideration does not include within the limits of the city of Denver these existing municipalities; but the proposed boundaries of the city of Denver go beyond these municipalities, and the city of Denver, as thus constituted, is made to surround these towns and cities on all sides, and they are thus cut off from any further growth or territorial expansion. The operation of the act, as well as its form and its words, must be looked to to determine the constitutionality of a measure.

If the legislature, by a special law, may thus extend the boundaries of a city so as to include therein noncontiguous territory, with a number of existing municipalities incorporated under the general laws of the state lying between such noncontiguous territory and the previously established limits of the city whose boundaries are thus sought to be extended, such legislation would just as effectually stop the growth and development and curtail the powers of these intervening corporations, which are granted to them under the general incorporation laws, and practically and just as effectually disincorporate them as to some of the powers and privileges granted to them by general law, as though the special legislative act in so many words swept them out of existence. Thus would the special law in effect repeal and render nugatory the general incorporation laws of the state. Thus would towns and cities incorporated under the general laws be forced by a special law involuntarily to surrender the

powers and privileges acquired under such general laws. To accomplish such results by indirection, when the same could not be done directly, would nullify the limitations imposed by the constitutional provision referred to.

The petition for rehearing should be denied.

*Rehearing denied.*