[No. 4648.]

## THE TOWN OF MONTCLAIR V. THOMAS.

**Cities and Towns — Boundaries — Disincorporation — Statutory Construction.**

An act establishing the limits of the city of Denver (Session Laws 1901, page 162) described the exterior boundaries by metes and bounds, excepting therefrom all incorporated towns and cities situated within said boundaries. The 20th amendment to the constitution establishing the city and county of Denver provides that the city of Denver and all municipal corporations included within the exterior boundaries of the city of Denver are consolidated and declared to be a single body politic and corporate by the name of the "City and County of Denver." The incorporated town of Montclair was situated within the exterior

boundaries of the city of Denver and on the eastern border of said city. Held, that by the adoption of said 20th amendment the town of Montclair was disincorporated and merged into the city and county of Denver.

*Error to the County Court of the City and County of Denver.*

Mr. T. E. WATTERS, for plaintiff in error.

Mr. SYLVESTER G. WILLIAMS and Messrs. ELLIOTT & BARDWELL, for defendant in error.

CHIEF JUSTICE CAMPBELL delivered the opinion of the court.

The only question for determination is whether the town of Montclair was disincorporated and became merged into the city and county of Denver by article 20 of the constitution. This is to be resolved by ascertaining what were the exterior boundaries of the former city of Denver upon the taking effect of the constitutional amendment now known as article 20 of the constitution. Section 1 thereof reads:

"The municipal corporation known as the city of Denver, and all municipal corporations and that part of the quasi-municipal corporation known as the county of Arapahoe, in the state of Colorado, included within the exterior boundaries of the said city of Denver as the same shall be bounded when this amendment takes effect, are hereby consolidated and are hereby declared to be a single body politic and corporate, by the name of the 'City and County of Denver.'" Session Laws 1901, 97.

This section also provides that all property theretofore owned by the city of Denver and by "such included municipal corporations" shall pass to the new city and county of Denver. Section 3 ordains that when the governor issues his proclamation showing the adoption of the amendment, "the

city of Denver, and all municipal corporations and
that part of the county of Arapahoe within the
boundaries of said city, shall merge into the city and
county of Denver."

We must consult the special charter of the city
of Denver and the amendments thereto to find what
are its limits. In 1893, in revising that instrument,
the general assembly specifically defined those lim-
its. In passing upon that act this court, in *City of
Denver v. Coulehan*, 20 Colo. 471, held that it was
beyond the power of the legislature to extend or
enlarge the territorial limits of a specially chartered
city by adding thereto noncontiguous lands; that
is, lands entirely separated from such city by inter-
vening territory, which at the time was included with-
in separate and independent municipalities organ-
ized under the general laws. To the extent that this
act purported to do so, it was declared unconstitu-
tional. Soon thereafter some, if not all, of these in-
tervening municipalities on the west became annexed
to the city of Denver, and it became necessary with
particularity again to define its boundaries. So that
in 1901, at the same session at which article 20 was
proposed for submission, the general assembly
passed what is known as the Parks bill into an act
establishing the limits of the city of Denver. Ses-
sion Laws 1901, 162. Therein, and in section 2, these
boundaries were described by metes and bounds in
such a way as to conform to the decision in the Coule-
han case, and therefrom was excluded the noncontig-
uous lands on the west, but in other respects the boun-
daries were left as they were by the act of 1893. In
each of them, after the specific description by metes
and bounds, occurs the following language: "The
territory included within the last above described
boundaries being situated in the county of Arapahoe
*  *  *  ; excepting, however, all towns and cities

incorporated and now existing or hereafter incorporated under the general laws of the state and situated within said last mentionel boundaries.''

It is conceded that within the exterior boundaries, as thus specifically and first defined, lay not only the city of Denver proper, but on its east boundary line the town of Montclair, on the north boundary line the towns of Elyria, Globeville, Argo and Berkeley, and on the westerly boundary line Valverde. If, therefore, these boundaries were not changed by the excepting clause, these municipalities were included within the exterior boundaries of the city of Denver as they existed when the constitutional amendment took effect.

It is the contention, however, of plaintiff in error that the excepting clause above quoted had the effect to exclude the town of Montclair from the limits of the city of Denver by making the eastern exterior boundary of that city the westerly boundary of the town. The opposing contention is that the plain intention of the constitutional amendment was, and is, to include within the consolidated city and county of Denver all the municipal corporations which lay within the exterior boundaries of the former city of Denver, as defined by metes and bounds by the Parks bill. The quoted language from section 1 of article 20 contemplates that at the time of the passage by the general assembly of the proposed amendment there were, or thereafter might be, within the exterior boundaries of the city of Denver other independent municipal corporations. That such exterior boundary lines as actually surveyed on the ground, and as subsequently delineated on the plat that was filed, included seven separate municipal corporations is conceded. We cannot adopt the contention of plaintiff in error respecting the effect of the excepting clause. It may be that there is no special significance in the

use of "exterior" boundaries and that the bounding lines of a specified territory mark its extreme limits without using such explanatory adjective. But that is not now important. Our present purpose is to ascertain what was meant when it was said by the general assembly, and afterwards by the people, that there should be consolidated into one municipal body all municipal corporations which are, at a given date, within the exterior boundaries of the former city of Denver.

The Coulehan case has nothing whatever to do with the question now before us, though plaintiff in error vigorously argues that it is decisive that boundary lines of a municipality cannot be placed where it has no territory of its own on which to trace them. We are unable to find in the opinion such announcement, or that, if there, the principle is applicable to the present controversy. The clause excepting, or withdrawing, from the territory included within the limits of the city of Denver all incorporated cities or towns within "said last mentioned boundaries," does not change or affect such exterior boundaries. They remain just as defined by metes and bounds in the first part of the act. The office of the exception is to preserve intact these included municipal organizations, and to exclude the territory covered thereby from that which, were it not for the proviso, would be a part of the territory of the city of Denver. Suppose, for example, that within these specified exterior boundaries, and at the geographical center of the land thus circumscribed, there existed a town with defined boundaries no one of which coincided with any of the boundaries of the city that completely surrounded it, just as, in fact, the town of Argo, near the north boundary, has no boundary line which touches any such line of the city of Denver. Would the clause excepting the smaller, and enclosed town

from the limits of the larger in any proper sense affect the exterior boundaries of the larger? We think not. For the same reason and upon the same principle, the same result would be true when a boundary line of the smaller happens to coincide with the boundary line of the larger. It is not inconsistent to say, under the facts of this case, that the exterior boundary lines of the city of Denver may be, and were, so drawn as to fall upon land outside of that subject to its municipal control, and that the exterior boundaries of the city may be, and were, so placed as to include independent municipalities. Indeed, unless we say that the exterior boundaries are beyond, outside of, these municipalities, it would be absurd to refer to "included" municipalities.

If there were no other reason for this conclusion, the language quoted from section 1 of article 20 would be decisive. For if the easterly exterior boundary line of the former city of Denver is the westerly boundary line of the former town of Montclair, and if the northerly boundary line is the southerly boundary line of three of the former towns above mentioned, and the westerly boundary line is coincident with the easterly line of the former town of Valverde, there never was, and never could be, a municipal corporation within the exterior boundaries of the city of Denver other than that city itself, for that city, if such contention were true, would cover and occupy every foot of territory enclosed by these boundaries. Yet article 20 expressly says that not only the city of Denver, but all municipal corporations within its exterior boundaries as the same shall be bounded when such amendment takes effect, shall be consolidated into the new city and county of Denver. This necessarily implies that municipal corporations other than Denver are, or may be when the act takes effect, embraced within its exterior boundaries. But, as we

have said, if the contention of plaintiff in error were correct, that could never be.

Our conclusion, therefore, is that it was the purpose of the general assembly to provide in article 20 for disincorporating, and merging into a new one, all municipal bodies within the exterior boundaries of the former city of Denver as these boundaries are specifically described in the Parks bill; and when the expression "exterior boundaries" was used, thereby was meant the boundaries which were drawn so as to include the seven municipal corporations named. Any other conclusion would defeat the conceded object of the general assembly. As the language employed allows us to give effect thereto, it is our duty to see that the legislative intent is not thwarted.

The judgment of the county court, being in harmony with our views, is affirmed.　　　　*Affirmed.*