## HOLGUIN et al. v. VILLALOBOS.
### No. 4510.

Court of Civil Appeals of Texas. El Paso.
April 17, 1947.

Rehearing Granted June 19, 1947.

Rehearing Denied Aug. 7, 1947.

M. Scarborough, J. E. Quaid, and Leo Jaffe, all of El Paso, for appellants.

Burges, Scott, Rasberry & Hulse, of El Paso, for appellee.

SUTTON, Justice.

This appeal is from the 41st District Court of El Paso County.

The appellee, as plaintiff, sued eight individuals, who are appellants here, wherein he sought and obtained a permanent injunction enjoining and restraining them each individually from operating any motor propelled passenger vehicle for the regular transportation of persons as passengers for compensation and hire over any public highway of this State between the City limits of the City of El Paso, Texas, and the towns of Ysleta, Socorro, San Elizario and Clint, Texas, and all intermediate points between each of said cities and towns, until and unless such defendants procure a certificate of convenience and necessity from the Railroad Commission of Texas. From that judgment this appeal is prosecuted.

Plaintiff alleged he was, and had been for many years, the owner of a Motor Bus Certificate of necessity and convenience authorizing him to operate a bus line between the cities and towns named above and with other appropriate allegations with respect to the operation of bus service between such points. He complained that the defendants were unlawfully and without authority operating motor propelled passenger vehicles as "jitneys" over the routes served by the plaintiff and over the highways of the State for compensation and hire, and as such were "common carriers" within the meaning of the applicable statutes, and otherwise alleged an infringement and violation of plaintiff's legal rights, unnecessary to detail.

The defendants specially denied all the material allegations of plaintiff's petition, and specially pleaded they were operating taxi cab service within the corporate limits of the City of El Paso and the suburbs thereof, and were not subject to regulation by the Railroad Commission. They set up that the territory between the points hereinbefore mentioned were built up areas and for all practical purposes were one community composed of residents engaged in farming and occupations in the City of El Paso.

The trial court, without objection and exception, and without requested issues, submitted to the jury one special issue wherein the jury were asked if "the defendants operate their motor propelled vehicles wholly within the limits of the City of El Paso, Texas, and the suburbs thereof?" To this issue the jury answered "No."

"Suburbs" was defined to mean "an outlying part of the city; or surrounding territory adjacent to the City."

The Court in its judgment recites the findings of fact in substantial compliance with the claims of the plaintiff and concluded he was entitled to the relief sought under the facts and the law.

The defendants have numerous points but as we construe them they are all directed to but one end or conclusion and that they are operators of taxi services within the corporate limits of the City of El Paso and the suburbs thereof and come within the exception provided in Section 1(c), Art. 911a, Vernon's Civil Statutes.

The testimony is it is eight miles from El Paso to Ysleta; nine miles from Ysleta to Clint; likewise nine miles from Ysleta to San Elizario and two miles from Clint to San Elizario. The evidence discloses the territory between all the mentioned points is heavily populated but that rural, farming area intervenes between each of the points, hence the finding of the jury finds support in the evidence.

500

Likewise the findings made by the trial court are amply supported by the testimony. It was admitted the defendants each make numerous trips daily in passenger cars over the highways between the City of El Paso and the outlying towns and communities, hauling from one to six or more passengers for which they charged fees ranging from fifty cents each to two dollars, depending upon the load. They had been engaged in this business for many years, one as long as eighteen years. They maintained stands in both El Paso and Ysleta, but there is testimony in the Statement of Facts to the effect they made stands at various places in the smaller valley towns and picked up passengers along the way.

It is our conclusion they fall clearly within the provisions of Section 1 (c), Article 911a, supra, unless they are within the exception. We think they are not protected by the exception. Webster's New International Dictionary defines a suburb to be:

"An outlying part of a city or town; a smaller place adjacent to a city."

This meaning seems to be well and commonly understood. The City of El Paso, like any other city or town, is comprised of the urban inhabitants of one area within, or within and without the corporate limits. If the inhabitants of a larger municipality extend themselves so as to join up with, or make an adjoiner with, a smaller community whether incorporated or not the latter is said to be a suburb of the former, as it also the urban territory adjacent to an incorporated town or city. Under such definition and understanding communities separated by rural farming areas cannot be suburbs one of the other. The Supreme Court long ago attached much meaning to a town or city, saying the term carries with it the idea of a considerable aggregation of people living in close proximity. A town population is distinguished from a rural population, which is understood to signify a people scattered over the country, and engaged in agricultural pursuits, or some similar avocations, requiring a considerable territory for its support. A section of country so inhabited cannot be called a town, nor treated as a part of a town, without doing violence to the meaning ordinarily attached to that word. State ex rel. v. Eidson, 76 Tex. 302, 13 S.W. 263, 264, 7 L.R.A. 733. To the same substantial effect is the language found in the City of Denver v. Coulehan, 20 Colo. 471, 39 P. 425, 27 L.R.A. 751; the legal as well as the popular idea of a town or city in this country both by name and use is that of oneness, community, locality, vicinity; a collective body, not several bodies; collective body of inhabitants; that is, a body of people collected or gathered in one mass, not separated into distinct masses, and having a community of interests, because residents of the same place, not different places. So as to territorial extent, the idea of a city is one of unity, not of plurality; of compactness or continuity, not separation or segregation. So, we conclude the outlying towns and communities from necessity and common understanding cannot be suburbs or parts of the City of El Paso but are separate and apart from it.

We regard the judgment of the trial court as correct and it is affirmed.

McGILL, Justice.

On Motion for Rehearing.

A majority of the court have concluded that we erred in affirming the trial court's judgment in this case. It is apparent from the judgment that the trial judge thought that appellee was entitled to the injunctive relief he sought unless appellants were "operating their cars wholly within the city of El Paso and the suburbs thereof." The judgment so recites. The only finding of the jury is to effect that appellants did not operate their motor propelled vehicles wholly within the limits of the city of El Paso and the suburbs thereof. Section 1(c) of Article 911a, V.A.C.S., contains the following proviso:

" * * * provided further, that the term 'Motor Bus Company' as used in this Act shall not include corporations or persons, their lessees, trustees, or receivers, or trustees appointed by any court whatsoever, insofar as they own, control, operate, or manage motor propelled passenger vehicles operated wholly within the limits

of any incorporated town or city, and the suburbs thereof, whether separately incorporated or otherwise."

Under this proviso appellants could lawfully operate wholly within the limits of the city of El Paso and the suburbs thereof without having first obtained a certificate of convenience and necessity from the Railroad Commission. The injunction granted enjoins them from operating "Over any public highways of this state between the city limits of the city of El Paso, Texas, and the towns of Ysleta, Socorro, San Elizario and Clint, and all intermediate points between said cities and towns, and between the town of Ysleta and the towns of Socorro, San Elizario and Clint and all intermediate points between such towns," regardless of whether any of such highways run through suburbs of the city of El Paso. There is no finding that none of the territory through which the highways embraced within the injunction extend is suburban to the city of El Paso and the evidence does not establish this fact beyond issue. Under the proviso above quoted appellants have the right to operate over that portion of such highways, if any, which extend through such suburban territory. It was incumbent upon appellant to establish facts to negative the proviso of the statute before he was entitled to the injunctive relief which he sought and which was granted. Gillis v. Rosenheimer, 64 Tex. 243, 246; Harding v. W. L. Pearson & Co., Tex.Com.App., 48 S.W.2d 964; Plough Inc. v. Moore, Tex. Civ.App., 56 S.W.2d 681; Hood v. Scott, Tex.Civ.App., 67 S.W.2d 909; Barkley v. Conklin, Tex.Civ.App., 101 S.W.2d 405; Lower Colorado River Authority v. Gulf Coast Water Co., Tex.Civ.App., 107 S.W. 2d 1101; Sneed v. Ellison, Tex.Civ.App., 116 S.W.2d 864.

If the term "city limits" has any other meaning than corporate boundaries of the city, then the injunction as granted is too indefinite and uncertain to be enforced. Appellants at their peril must determine for themselves where the city limits are located.

The motion for rehearing is granted, the judgment of this court affirming the judgment of the trial court set aside, and the judgment of the trial court is reversed and the cause remanded.

SUTTON, Justice (dissenting).

I find no cause to recede from the original decision reached in this case by this court, nor can I agree with the interpretation placed upon the trial court's judgment. The trial court recognized that under the instant statute the defendants might legally operate within the city of El Paso and the suburbs thereof. That is made plain by the judgment. The judgment should not be construed to mean the corporate limits if it may be otherwise construed and brought within the statute. It is an elementary rule of construction that if susceptible thereto a judgment should be so construed as to give it validity rather than strike it down; and to be within the law rather than without it, 25 T. J. page 459, Sec. 87 and cases cited; 49 C.J.S., Judgments, § 228, page 435, Sec. 435; Gough v. Jones, Tex.Com.App., 212 S.W. 943; and Keton v. Clark, Tex.Civ.App., 67 S.W.2d 437, to which of course many other authorities might be added. It is thought the trial court intended, and it is certainly susceptible to the construction, that the defendants should be restrained from operating on the highways outside the city of El Paso and the suburbs thereof.

Any traveler knows where a city or town begins and ends though he be totally ignorant of the legal or corporate boundaries thereof. As said in the original opinion, the City of El Paso, like any other city or town, is comprised of the urban inhabitants of one area within, or within and without the corporate limits. If the inhabitants of a larger municipality extend themselves so as to join up with, or make an adjoinder with, a smaller community whether incorporated or not the latter is said to be a suburb of the former, as is also the urban territory adjacent to an incorporated town or city. Under such definition and understanding communities separated by rural farming areas cannot be suburbs one of the other. The Supreme Court long ago attached such meaning to a town or city, saying the term carries with it the

502

idea of a considerable aggregation of people living in close proximity. A town population is distinguished from a rural population, which is understood to signify a people scattered over the country, and engaged in agricultural pursuits, or some similar avocations, requiring a considerable territory for its support. A section of country so inhabited cannot be called a town, nor treated as a part of a town, without doing violence to the meaning ordinarily attached to that word. State ex rel. v. Eidson, 76 Tex. 302, 13 S.W. 263, 264, 7 L.R.A. 733. To the same substantial effect is the language found in the City of Denver v. Coulehan, 20 Colo. 471, 39 P. 425, 27 L.R.A. 751, the legal as well as the popular idea of a town or city in this country both by name and use is that of oneness, community, locality, vicinity; a collective body, not several bodies; collective body of inhabitants; that is, a body of people collected or gathered in one mass, not separated into distinct masses, and having a community of interests, because residents of the same place, not different places. So as to territorial extent, the idea of a city is one of unity, not of plurality; of compactness or continuity, not separation or segregation.

It is thought the injunction could not be made more definite by setting up some other imaginary boundary as the limits beyond which the defendants may not pass. Under the instant statute it is not practical to limit the restraint to an exact line or boundary but it must be sufficiently flexible to meet constantly changing conditions. The law is not an exact thing and any exact application of it necessarily becomes oppressive and unjust. It may not be presumed any executive officer would undertake to unjustly enforce the injunction, and if he should the courts would permit it, but on the contrary it may be properly presumed that it will be applied practically and justly.

Moreover, defendants do not make the point upon which the judgment is now reversed.

It follows, of course, in my humble judgment the motion should be overruled.