TOWN OF GRIFFING PARK et al. v. CITY OF PORT ARTHUR et al.

, No. 2057.

Court of Civil Appeals of Texas. Beaumont.

Feb. 26, 1931.

Sonfield & Sonfield, of Beaumont, for appellants.

Shivers & Baker, of Port Arthur, for appellees.

WALKER, J.

Appellants were plaintiffs below, and appellees were defendants. The plaintiffs were the town of Griffing Park, a duly incorporated municipal corporation, and its duly elected and qualified mayor and aldermen, suing both in their official capacity and as taxpayers, residing and having real and personal property situated within the corporate limits of the town of Griffing Park. The defendants were the city of Port Arthur and J. W. O'Neal, mayor, F. H. Drunagle and C. B. Moore, commissioners of the city of Port Arthur. The plaintiffs brought this suit to enjoin the city of Port Arthur from annexing and absorbing the town of Griffing Park. This relief was sought on the following allegations:

(a) Prior to and at the time of the act of annexation the town of Griffing Park was a municipal corporation duly incorporated under chapter 11, title 28, R. S. 1925, and was functioning as such. The boundaries of the town of Griffing Park were specifically pleaded by plaintiffs.

(b) The city of Port Arthur was and is a municipal corporation duly incorporated and existing under and by virtue of a special charter granted it by the Legislature, being chapter 52 of the Acts of the Thirty-Sixth Legislature.

(c) Section 1, chapter 2, of the City Charter, is as follows: "Territory adjoining the corporation limits of the City of Port Arthur, regardless of shape or configuration, may be annexed to said City as follows." Article 1265, R. S. 1925, is as follows: "Any city having a population of 100,000 and under 150,000 as shown by the preceding Federal census, shall have the power and authority to amend its charter so as to extend its boundary limits by annexing additional territory adjacent and contiguous to such city, where the territory so annexed does not include any incorporated city or town having more than five thousand inhabitants according to the preceding Federal census. Such extension shall be effected in the manner following." The point was made that this charter provision and the cited article of the general statutes constituted all the grant of power to the city of Port Arthur to annex adjoining territory.

(d) On the 26th of November, 1929, an election was held in the city of Port Arthur and in adjoining territory, in which was included the town of Griffing Park, to determine whether or not the city of Port Arthur should absorb and annex this territory. The election resulted in favor of the annexation, and, by

ordinance, the necessary result was declared, and, under authority of the election and the ordinance, the city of Port Arthur was attempting to extend its jurisdiction over the incorporated territory of Griffing Park. No attack was made upon the election or the manner of calling the election, nor upon the ordinance declaring the result of the election. The only attack made by plaintiffs' petition was that the act of consolidation was absolutely void because without authority of law or color of law. There was no pleading of any irregularity in the steps taken by the city of Port Arthur upon which the act of consolidation must rest. Thus, plaintiffs were attempting to plead a void and not a voidable act.

(e) It was further alleged that the city of Port Arthur did not have a population of 100,-000 nor of 150,000 at the time of the annexation, but by the census of 1920 its population was only 31,513, and at the time of the annexation was "approximately 50,000."

(f) It was further alleged that the city of Port Arthur had been a municipal corporation since 1911; that it had issued bonds for various purposes which, at the time of the annexation, had not matured and would not mature for many years; that these bonds amounted to about $4,450,000, bearing interest at 5 per cent; that the city of Port Arthur had voted additional bonds in the sum of $1,-605,000, which it was proposing to sell; that the bonds already sold were binding and legal obligations of the city of Port Arthur and could only be paid by the proceeds of taxes, levied against the property within the corporate limits of the city, and, if the annexation was permitted to stand, plaintiffs' property would be subject to taxes to pay off these bonds; that the city of Port Arthur was attempting to exercise jurisdiction over the property included within the corporate limits of the town of Griffing Park and to collect taxes against such property as if it were legally a part of the city of Port Arthur; that the city of Port Arthur, under the act of consolidation, would oust the town of Griffing Park of all the rights vested in it by law as a municipal corporation, seize its property, and abolish its offices, and deprive its duly qualified officers of their constitutional rights to perform the functions of their offices.

The prayer was for a temporary injunction, enjoining the city of Port Arthur from putting in force its act of annexation and upon trial for permanent relief. A temporary injunction was granted as prayed for.

When the case was called for trial appellees presented as their sole defense, as far as the transcript reflects, the following plea in abatement:

"Now comes the defendant, The City of Port Arthur, J. W. O'Neal, Mayor, C. B. Moore and F. H. Drunagle, Commissioners, and respectfully shows to the Court that this suit should be abated and dismissed, for the following reasons:

"First: This is a suit brought by Griffing Park, as an incorporated town, by L. L. Abshire, J. E. Day, E. L. Paxton, T. E. Gregory and Perry LaGrone, as individuals, and is in substance and effect a contest of the election held by the City of Port Arthur annexing said territory including the territory known as Griffing Park, and being a suit attacking the legality of the election, and same must be brought on relation of the State and not by individuals, and if defendants are mistaken, and if it is shown that the town of Griffing Park may maintain the suit, then these defendants say that the gentlemen named as plaintiffs, suing in their individual capacity, cannot bring or maintain said suit as individuals, because it is an attack on the legality of an action, and they, as individuals, cannot under the law of Texas so maintain said suit.

"Wherefore, defendants pray that this suit be in all things abated and dismissed, at plaintiffs' cost."

In appellees' brief there are references to other pleadings, but, as no such pleadings are found in the transcript, this appeal must be decided upon the plaintiffs' petition and upon defendants' plea in abatement, which constitute all the pleadings reflected by the transcript. Upon trial, the plea in abatement was sustained, and plaintiffs' suit in all things "abated and dismissed." No evidence whatever was heard by the court, either in support of the plaintiffs' petition or the plea in abatement. The judgment of the trial court was simply that plaintiffs, suing in the capacity reflected by their petition, had no right to maintain this suit.

## Opinion.

As construed by the trial court, the plea in abatement was given the effect of a general demurrer. The plea confessed as true all the facts alleged by plaintiffs' petition, and merely challenged the sufficiency of these facts to constitute in law a cause of action in favor of plaintiffs. The following authorities sustain this construction of defendants' plea in abatement. Breen v. Railway Co., 44 Tex. 302; Cavin v. Hill, 83 Tex. 73, 18 S. W. 323; Price v. Wakeham, 48 Tex. Civ. App. 339, 107 S. W. 132, 133. The judgment of the court rests upon a principle of law now generally recognized by the jurisprudence of this state. This principle was thus stated by Judge Leddy, speaking for the Commission of Appeals, in Kuhn v. City of Yoakum, 6 S.W.(2d) 91: "The rule has not been deviated from in this state that the validity of an extension of territory of a city or school district can only be attacked by a direct suit in the nature of a quo warranto by the state, or in a proceeding in which the state is a party."

■ Appellants do not question, but concede, the soundness of the rule thus stated. However, they seek to bring their case within the following rule of equal authority in this state, which may be stated as follows: An act of a municipal corporation, wholly beyond its powers and jurisdiction, that is, an act not authorized by law or color of law, is absolutely void and subject to collateral attack by any one whenever and wherever the validity of the act is called in question. The distinction between these two rules was thus recognized by Judge Leddy in the case cited supra: "Plaintiffs in error seek to avoid the operation of this well-settled rule by the contention that the action brought by them is not an attack upon the school district as extended, but is one to prevent the invasion of private property rights, the assertion being made that the validity of the district is only incidentally involved. It is sought to bring this case within the rule announced by our. Supreme. Court in Parks v. West, 102 Tex. 11, 111 S. W. 726. The distinction between this case and the doctrine laid down in the Parks Case is obvious. There the district had no legal existence not even being a de facto one under the Constitution. Here it is not claimed that the independent school district of the city of Yoakum was not a valid corporate entity clothed with full and complete power to annex the territory involved. It is simply asserted that it has failed to comply with the law governing the annexation of such territory. In the Parks Case the district which attempted to levy a tax against the complaining property owners was without legal power to act in the premises. Its action was therefore wholly void and subject to collateral attack."

■ The only question presented by this appeal is whether or not, on the face of plaintiffs' petition, they have pleaded facts making the act of annexation absolutely void and not merely voidable, because, if the act was merely voidable, the state was a necessary party.

■ Upon a careful review of plaintiffs' petition, it is our conclusion that the act of annexation was absolutely void and that the court erred in sustaining the plea in abatement because, on the face of the petition, the city of Port Arthur had no legal power or jurisdiction to annex the town of Griffing Park either under its charter or the general statutes or the Constitution. We rest this conclusion upon the following reasons:

The article of the general statutes quoted above is the only article authorizing one municipal corporation to annex another municipal corporation. The reading of this article expressly excludes the city of Port Arthur from its provisions. No provision of the Constitution expressly authorized the annexation. So it follows that neither the general statutes nor the Constitution sustain the annexation by any specific grant of authority.

■ There being no express authority in the general statutes or the Constitution, then they must be examined for an inferred or implied authority. To infer or imply the power and jurisdiction in the city of Port Arthur to annex the town of Griffing Park, under the provisions of article 1265 or any other provision of the statute, it must appear not only that the annexation of the town of Griffing Park would be convenient, useful, and beneficial to the city of Port Arthur, but also indispensable for the discharge of the obligations and purposes of its corporate existence, Foster v. City of Waco, 113 Tex. 352, 255 S. W. 1104; and this must appear beyond a reasonable doubt, City of Arlington v. Lillard, 116 Tex. 446, 294 S. W. 829. Plaintiffs' petition affirmatively excludes any necessity for the annexation, and defendants' plea of abatement raised no issue of necessity.

Nor does the charter of the city of Port Arthur sustain the act of annexation. In addition to section 1, chapter 2, quoted above, the charter contains the following general provisions, being section 1 of chapter 2 of article 3: "And provided, further, that the specification of particular powers herein authorized shall never be construed as a limitation upon the general powers herein granted, it being intended by this Act to grant and bestow upon the inhabitants of the city of Port Arthur full powers of self government, and it shall have and exercise all powers of municipal government not prohibited by this charter, or by some general laws of the State of Texas, or by the provisions of the Constitution of the State of Texas." This section in no way enlarges or extends the provisions of section 1, chapter 2. Construing identical language in the charter of the city of Dallas, the Supreme Court, in Southwestern Telegraph & Telephone Co. v. City of Dallas, 104 Tex. 114, 134 S. W. 321, 323, said: "A municipal corporation possesses no power not derived from its charter, therefore the general terms 'full powers of self-government,' and 'all powers of municipal government not prohibited by this charter,' add nothing to the terms of the charter. We still must look to the charter for the authority to sustain an act done by the corporation. 28 Cyc. 258, B, Powers; City of Brenham v. Water Co., 67 Tex. 542, 4 S. W. 143."

■ It follows that the city of Port Arthur must look alone to section 1, chapter 2, to sustain its annexation of the town of Griffing Park. Under the allegation of plaintiffs' petition, the town of Griffing Park was "territory adjoining" the corporate limits of the city of Port Arthur. On this fact defendants contended below, and so contend here, that section 1, chapter 2, expressly empowered it to annex the town of Griffing Park. This charter provision must be construed in connection with article 1265, supra. By that ar-

ticle the Legislature undertook to deal specifically with the right of one municipal corporation to annex another municipal corporation. As cities exercise only delegated powers, all acts done by them must find authority in the law of their creation. As we have construed article 1265, it gave the city of Port Arthur no power to annex the town of Griffing Park. So under the general statutes it must be said that the city of Port Arthur was denied the right to annex an adjoining municipal corporation. The most that can be said in favor of the argument of the city of Port Arthur is that a conflict exists between the general language of its charter and the specific language of the general statutes. Where the literal language of one statute conflicts with the literal language of another statute, the rule is that they must be construed together and harmonized, if possible, so as to give effect to each of them. State ex rel. Time Ins. Co. v. Superior Court, 176 Wis. 269, 186 N. W. 748. As directly applicable to the question before us, the following rule is announced by 43 C. J. 118, footnote 42(b): "A statute authorizing in broad and unlimited terms the annexation of any territory lying adjacent to a city, will be construed in connection with another statute providing for the detachment of territory, so as not to permit the annexation by one city of territory included in another city until such territory is first lawfully detached from the latter city. Wauwatosa v. Milwaukee, 180 Wis. 310, 192 N. W. 982."

It can also be said that section 1, chapter 2, does not authorize the act of consolidation because the charter of the city of Port Arthur makes no provision for assuming the outstanding debts of an annexed municipal corporation nor for the dissolution of its corporate existence nor for the disposition of its property. Where there is no statute or charter provision providing for these conditions, only the rule of absolute necessity would sustain the courts in reading them into the general statutes or a city charter. Discussing this very point, where the city of Fargo attempted to annex a part of the corporate territory of the village of Fargo, the Supreme Court of North Dakota, in Village of North Fargo v. City of Fargo, 49 N. D. 597, 192 N. W. 977, 982, said: "Our Legislature has provided a method for disconnecting territory from a village. That method was not followed in this case, but another municipal corporation assumes to detach such territory in another manner. * * * We are of the opinion that the Legislature never intended to give a city such power and that such power cannot and should not be implied."

Sustaining this conclusion, the court said: "It is legitimate in this connection to take note of the policy of the Legislature of this state in regard to the general question of the division and consolidation of public corporations. The Legislature has, on numerous occasions, provided for the division and consolidation of school districts, townships and counties, and for the annexation of the territory of one such public corporation by another. In every instance, provision has been made by the Legislature for the equalization of indebtedness and property generally in the event of division, annexation, or consolidation. Sections 1312, 1321, 1327, 4079-4082, 3212-3214, C. L. 1913. No such provision is made in the statutes applicable to corporations of the next higher grade, namely, municipal corporations. It seems to us that this omission to deal with an important and practical aspect of the annexation question is significant and indicative, in connection with other considerations, of the absence of legislative intention to permit one municipal corporation to *absorb another* or annex a portion of its territory." (Italics ours.)

For the reasons stated, we think the trial court erred in sustaining the plea in abatement. However, it is not to be concluded from anything we have said that defendants are to be denied the right, on a trial on the merits, to controvert plaintiffs' petition by filing such defensive pleas as they may think necessary to protect their rights.

**Reversed and remanded.**