Nos. 19,991 and 20,021.

BOARD OF COUNTY COMMISSIONERS OF JEFFERSON COUNTY,
ET AL., *v.* CITY AND COUNTY OF DENVER, ET AL.
(372 P. [2d] 152)

Decided May 21, 1962.   Rehearing denied June 11, 1962.

Messrs. BRADLEY, CARNEY & JOHNSON, for plaintiffs in error.

Mr. ROBERT S. WHAM, Mr. RICHARD P. MATSCH, Messrs. NEEF, SWANSON and MYER, for defendants in error.

Mr. SAMUEL S. SHERMAN, JR., Mr. MICHAEL A. WILLIAMS, Mr. RICHARD D. DITTEMORE, Mr. H. E. CARLENO, Mr. GEORGE LOUIS CREAMER, Mr. WILLIAM B. NAUGLE, Mr. RICHARD H. SIMON, Amici Curiae.

*En Banc.*

Mr. Justice Sutton delivered the opinion of the Court.

Plaintiffs in error, the Board of County Commissioners of Jefferson County, State of Colorado, brought two separate actions in their official capacity on behalf of the people of Jefferson County, and on their own behalf as residents, citizens, landowners, electors and taxpayers of Jefferson County, and as a class action on behalf of those similarly situated. They will be referred to as plaintiffs. Defendants in error are the City and County of Denver and the respective members of the Denver City Council, and will be referred to as defendants.

Plaintiffs challenge the validity of two annexations of land in Jefferson County to the City and County of Denver. Both suits were filed in the County Court of Jefferson County and were consolidated by this court because of questions of fact and law common to each. The principal issue is that land annexed to Denver is detached from the county from which it is taken, thereby rendering ineffective county tax planning and altering judicial, legislative, school and congressional district boundaries, all without state legislative action or a vote of the people. No annexations to other cities of the state create such challenging issues.

The facts are not disputed and can be briefly stated. Pursuant to C.R.S. '53, 139-11-3, certain landowners in Jefferson County petitioned the Council of the City and County of Denver for the annexation of their lands to Denver. Defendants approved the annexation petitions and, after giving public notice of the petitions, adopted ordinances annexing the territory in question to the City and County of Denver. Thereafter plaintiffs commenced these actions as persons aggrieved by the annexations under C.R.S. '53, 139-11-6.

The complaint in case No. 20,021 was substantially

similar to case No. 19,991 and alleged in pertinent part as follows:

"8. That as a result of said purported annexation, the boundaries of the County of Jefferson are changed, thereby depriving the citizens of Jefferson County of the benefits from the taxation of said annexed area.

"9. That as a result of said purported annexation, the boundaries of the Second Congressional District, State of Colorado, are changed contrary to the provisions of Section 44, Article V, Colorado Constitution.

"10. That no vote of the qualified voters of the County from which the territory is proposed to be stricken off was held as provided by Section 3, Article XIV of the Constitution of the State of Colorado.

"11. That as a result of said purported annexation the boundaries of the Eighth State Senatorial District and of the Jefferson County House of Representatives Legislative District are changed contrary to the provisions of Sections 46 and 47 of Article V of the Colorado Constitution.

"12. That as a result of said purported annexation the boundaries of the First Judicial District of the State of Colorado are changed contrary to the provisions of Section 14, Article VI of the Colorado Constitution.

"13. That as a result of said purported annexation the boundaries of School District R1 of Jefferson County, State of Colorado, are changed contrary to the provisions of C.R.S. '53, 123-8-1 et seq., which sections are the ones by which School District R1 of the County of Jefferson was created.

"14. That said ordinance was purportedly enacted pursuant to Chapter 139, Article II, Section 3 of 1953 Colorado Revised Statutes, and under the purported authority of Article XX, Section 1, of the Constitution of the State of Colorado, which allegedly gives the City and County of Denver power to annex territory without a vote of the qualified voters of the county from which the territory is proposed to be stricken off.

"15. That Article XX, Section 1 of the Constitution of the State of Colorado which purports to permit the City and County of Denver to annex territory of another county without submitting the question to the qualified voters of the county from which the territory is proposed to be stricken off is repugnant to Article XIV, Section 1 of the Constitution of the United States in that it denies equal protection of the laws to the citizens of Jefferson County.

"16. That by virtue of the foregoing, the ordinance purportedly annexing the above described area is unconstitutional and null and void and of no effect.

"17. That by virtue of the foregoing, the plaintiffs, and others similarly situated, are and have been aggrieved by such annexation proceedings.

"WHEREFORE, Plaintiffs pray that the annexation ordinance of the City and County of Denver * * * be declared contrary to the provisions of the Constitution of the United States, be declared null and void and of no force and effect, and that the City and County of Denver, its officers and agents be enjoined from exercising any jurisdiction or authority over the persons or property within the area described in said petition, and that the area involved herein be declared to be part of the County of Jefferson, State of Colorado."

In both cases defendants filed motions to dismiss, alleging in essence that plaintiffs had no legal capacity to sue under C.R.S. '53, 139-11-6, and that the complaint failed to state a claim upon which relief could be granted. The court granted the motions, dismissed the actions and plaintiffs are here by writs of error seeking reversal. Pending determination of the causes on writ of error, we granted leave to various members of the bar to appear as amici curiae.

In seeking reversal of the judgments of dismissal plaintiffs advance extensive arguments which we summarize below. They urge that:

1. Article XIV, Section 3 of the Colorado Constitution requires a vote of the qualified electors of the county from which land is sought to be annexed, and an approval of the annexation by a majority of such voters voting on the annexation. Article XX, Section 1, which provides for annexations to the City and County of Denver, does not purport to render Article XIV, Section 3, inapplicable to such annexations. Thus a majority vote of the voters in Jefferson County was necessary in order to validate the annexations in these cases.

2. If in fact Article XX, Section 1, does render Article XIV, Section 3, inapplicable to annexations to the City and County of Denver, then Article XX, Section 1, violates the equal protection clause of the fourteenth amendment to the United States Constitution.

3. The annexation provisions of Article XX, Section 1, have the effect of vesting in the City Council of Denver the power to alter congressional, legislative, judicial and school district boundaries. As such it violates Article V, Sections 44, 45, 46 and 47, and Article VI, Section 14 of the Colorado Constitution which vest congressional, legislative and judicial districting in the general assembly, and the Colorado School District Act as set forth in C.R.S. '53, 123-25-39. In addition Article XX, Section 1, violates the fourteenth amendment to the United States Constitution as an improper delegation of legislative power to the Denver City Council.

In considering plaintiffs' first argument we note that Article XX, Section 1 of the Colorado Constitution provides inter alia as follows:

"The general annexation and consolidation statutes of the state shall apply to the city and county of Denver to the same extent and in the same manner that they would apply to the city of Denver if it were not merged, as in this amendment provided, into the city and county of Denver. Any contiguous town, city or territory hereafter annexed to or consolidated with the city and

county of Denver, under any of the laws of this state, in whatsoever county the same may be at the time, shall be detached per se from such other county and become a municipal and territorial part of the city and county of Denver, together with all property thereunto belonging."

We also note that Article XX, Section 8 provides that:

"Anything in the constitution of this state in conflict or inconsistent with the provisions of this amendment is hereby declared to be inapplicable to the matters and things by this amendment covered and provided for."

This court has dealt with this same question in the past, and no good reason appears for an extended discussion here. We merely state, once again, that Article XX, Section 1, must be construed as modifying and limiting Article XIV, Section 3, insofar as a proposed annexation of territory to the City and County of Denver is concerned. Thus, annexations of such territory to the City and County of Denver can be effected under the statute without the consenting vote of the majority of qualified voters of the county from which the territory is detached. *People ex rel Simon, District Attorney v. Anderson, et al.,* 112 Colo. 558, 151 P. (2d) 972 (1944), and see *Simon et al. v. County of Arapahoe, et al.,* 80 Colo. 445, 252 Pac. 811 (1927).

This brings us to the second contention of plaintiffs that Article XX, Section 1, in granting such powers of annexation to the City and County of Denver, violates the fourteenth amendment to the United States Constitution in that it denies equal protection of the laws to the other counties and citizens of such counties in Colorado.

As to the claim that Jefferson County, by reason of Denver's action, is denied the equal protection of the law, we note that the Supreme Court of the United States has only recently stated that " * * * the Equal Protection Clause relates to equality between persons as such, rather than between areas and that territorial

uniformity is not a constitutional prerequisite." *Mc-Gowan et al. v. Maryland,* 366 U. S. 420, 427 (1961); see also *Bowman v. Lewis,* 101 U. S. 22 (1880) and *Salsburg v. Maryland,* 346 U. S. 545, 551 (1954). Plaintiffs' argument disregards the fact that municipalities and counties exist for the convenient administration of government and are merely instruments of the state, created to carry out the will of the state. *E.g., Railroad Company v. County of Otoe,* 83 U. S. 667, 676 (1872); *Town of Mount Pleasant and Town of Caledonia v. Beckwith,* 100 U. S. 514 (1880); *The People, ex rel. Elder, as Treasurer of the City and County of Denver v. Sours,* 31 Colo. 369, 383-84-85-86-87, 74 Pac. 167 (1903). It follows that the equal protection clause of the fourteenth amendment was not designed to protect state instrumentalities against state action, much less against the constitutional right of the people " * * * to alter and abolish their constitution and form of government whenever they may deem it necessary to their safety and happiness * * * ." Colo. Const., Art. II, Section 2; see also *Williams, etc., v. Mayor, etc.,* 289 U. S. 36, 40 (1933), wherein it was held that "A municipal corporation, created by a state for the better ordering of government, has no privileges or immunities under the federal constitution which it may invoke in opposition to the will of its creator. (Citing several previous cases.)" And see: *Hunter v. Pittsburgh,* 207 U. S. 161 (1907), where it was said: "The State, therefore, at its pleasure may * * * expand or contract the territorial area (there of a city), unite the whole or a part of it with another municipality, repeal the charter and destroy the corporation. All this may be done, conditionally or unconditionally, with or without the consent of the citizens, or even against their protest. In all these respects the State is supreme, and its legislative body, conforming its action to the state constitution, may do as it will, unrestrained by any provision of the Constitution of the United

States. \* \* \* The power is in the State and those who legislate for the State are alone responsible for any unjust or oppressive exercise of it."

Insofar as these suits were instituted by the Board of County Commissioners of Jefferson county in their official capacity, each was properly dismissed.

We next consider the question of whether Article XX, Section 1, of the Colorado Constitution denies the equal protection of the laws to the individual plaintiffs as residents, citizens, landowners, electors and taxpayers of Jefferson County.

In *Hunter,* supra the court ruled upon a Pennsylvania statute which provided for the union of contiguous cities by means of a majority vote of qualified voters in both cities. It was argued by those opposed to the merger that such a statute deprived the citizens of the annexed city of their property without due process of law by subjecting their property to the burden of additional taxation resulting from the consolidation of the two cities. The court disposed of this argument in the following language, which is particularly appropriate here:

"Although the inhabitants and property owners may by such changes suffer inconvenience, and their property may be lessened in value by the burden of increased taxation, or for any other reason, they have no right, by contract or otherwise in the unaltered or continued existence of the corporation or its powers, and *there is nothing in the Federal Constitution which protects them from these injurious consequences."* (Emphasis added.)

Even if there existed some constitutional restraint in the maintenance of county boundaries, the fact that the annexation provisions of Article XX, Section 1 apply to the City and County of Denver to the exclusion of other counties would not, on that basis alone, constitute a denial of equal protection of the laws to the people of Jefferson County. The classification under Article XX,

Section 1, is based upon geographical and historical conditions perculiar to Denver as a capitol city and regional commercial center, and is neither arbitrary nor unreasonable. A classification is not violative of equal protection merely because it is limited in the object to which it is directed or the territory within which it is to operate. *Hayes v. Missouri,* 120 U. S. 68, 71 (1887).

This brings us to the final contention of plaintiffs that the annexation provisions of Article XX, Section 1, vests in the City Council of Denver the power to alter congressional, legislative and judicial district boundaries in violation of Article V, Sections 44, 45, 46 and 47, and Article VI, Section 14 of the Colorado Constitution, and in violation of the fourteenth amendment to the United States Constitution, as an improper delegation of legislative power. It is also urged that this alleged delegation of power under Article XX, Section 1, to the City Council of Denver violates the Colorado School District Act.

▌ These contentions are based on the assumption that Section 1 of Article XX delegates to the City Council of Denver the power to alter at will the congressional, legislative, judicial and school district boundaries. However, such assumption is erroneous. Annexations to Denver are the only time when this occurs and these acts are the product of the free choice of the majority of statutorily authorized persons in the district seeking annexation. The City Council of Denver does not initiate the annexation proceedings; it merely accepts or rejects the annexation petition presented, subject to other statutory requirements. We perceive no constitutional violation of the rights of the individual plaintiffs by this procedure.

It is true that annexations to Denver result in altering congressional districts. This, however, is not because of Article XX, Section 1, but because of Article V,. Section 44, of the Colorado Constitution which provides that the general assembly shall divide the state into congressional

districts. The general assembly has so acted and has chosen county boundaries as the basis of division. C.R.S. '53, 63-4-1. That body still retains the power to change the congressional districts merely by changing the basis of division. There is nothing in Article XX, Section 1, which operates as a limitation upon the power of the general assembly to choose a different method of dividing the state into congressional districts.

It is likewise true that annexations to Denver alter the state legislative districts. Article V, Section 45, of the Colorado Constitution provides that the general assembly shall revise and adjust the apportionment for senators and representatives on the basis of a prescribed enumeration of inhabitants according to ratios fixed by law. Article V, Section 47, of the Colorado Constitution provides for the alteration of senatorial and representative districts as public convenience may require, and also provides that no county shall be divided in the formation of a senatorial or representative district. As in the case of congressional apportionment, the general assembly has chosen the county as the basis of legislative districting, C.R.S. '53, 63-1-3, 6. Article XX, Section 1, in no way abrogates the constitutional power of the general assembly to alter the senatorial or representative districts of the state.

As to the alteration of judicial districts, Article VI, Section 14, provides that the general assembly may increase or diminish the number of judicial districts and the judges therein, and that such districts shall be formed of compact territory and be bounded by county lines. Article XX, Section 1, provides that the City and County of Denver shall constitute one judicial district. The fact that annexations to the City and County of Denver result in changing the boundaries of judicial districts is a consequence of these constitutional provisions along with the general annexation provisions of Article XX, Section 1. There still remains with the

general assembly the power to increase or diminish the number of judicial districts in keeping with constitutional standards.

■ Plaintiffs finally argue that annexations to Denver violate the Colorado School District Act which provides in pertinent part that "no consolidation of existing school districts, annexation to existing districts * * * shall be made except as permitted under this article." C.R.S. '53, 123-25-39. We point out, however, that by virtue of Article XX, Section 7, the City and County of Denver is constituted as one school district, to be known as District No. 1. This constitutional provision also provides that "Upon the annexation of any contiguous municipality which shall include a school district or districts or any part of a district, said school district or districts or part shall be merged in said 'District No. 1,' * * * ." Although annexations under Article XX, Section 1, result in changing the boundaries of school districts, they do not render the annexation provisions of Article XX, Section 1, void, since the statute must yield to the constitution. It is expressly provided in Article XX, Section 7, that *"Except as inconsistent with this amendment,* the general school laws of the state shall, unless the context evinces a contrary intent, be held to extend and apply to the said 'District No. 1.'" (Emphasis added.) We do not acknowledge that there is any inconsistency between the School District Act and Article XX, but merely point out the underlying fallacy of plaintiffs' argument that Article XX is subordinate to the provisions of the statute.

In summary we hold that the annexations in these cases to the City and County of Denver under Article XX, Section 1, of the Colorado Constitution are not violative of the federal or state constitutions.

The judgments dismissing the complaints are accordingly affirmed.