## No. 20,235.

### The City and County of Denver, et al., v. O. J. Miller, et al.

(379 P. [2d] 169)

Decided February 11, 1963.    Rehearing denied March 4, 1963.

Mr. ROBERT S. WHAM, Mr. RICHARD P. MATSCH, Messrs. NEEF, SWANSON and MYER, for plaintiff in error City and County of Denver.

Mr. BELMORE T. MARTIN, for plaintiff in error The Robinson Brick and Tile Company.

Mr. RICHARD SIMON, Mr. GEORGE LOUIS CREAMER, for defendants in error.

*En Banc.*

MR. JUSTICE SUTTON delivered the opinion of the Court.

THIS matter involves the validity of the annexation of certain Arapahoe County lands to the City and County of Denver. We shall refer to the parties by name, or to plaintiffs in error as defendants and defendants in error as plaintiffs, as they appeared in the trial court.

Plaintiffs, alleging themselves to be aggrieved persons under C.R.S. '53, 139-11-6, filed their complaint in the trial court alleging in substance that Robinson's land, which is industrial in nature and contains no residents therein, was both ineligible for annexation under the statute because lacking the one-sixth boundary requirement and that the action of Denver in passing its annexation ordinance (Ordinance No. 141, Series 1961) violated both the state and federal constitutions as well as the "The school district organization act of 1957" [1960 Perm. Supp., C.R.S., Section 123-25-1 et seq.].

After hearing, judgment was awarded plaintiffs on their second through eighth claims. These claims alleged either or both constitutional and statutory violations other than seeking relief under the annexation statute (C.R.S. '53, 139-11). Plaintiffs' eighth claim sought a mandatory injunction against the Arapahoe County Assessor and Treasurer requiring them to continue to assess and collect taxes on the subject property and prohibiting Denver from so acting.

Denver seeks reversal of the judgment asserting that plaintiffs' second through seventh claims are the same as those recently held by this court to be without validity. See *Board of County Commissioners of Jefferson County, et al., v. City and County of Denver, et al.,* 150 Colo. 198, 372 P. (2d) 152 (1962). It is further asserted that plaintiffs' eighth claim upon which injunctive relief was granted must fail as a result thereof. Defendants continue to assert here as they did in the trial court, that none of plaintiffs are in fact persons aggrieved under the statute qualifying them to challenge the annexation. It is asserted that error was committed by the trial court in denying Denver's motion to dismiss on that ground. We shall consider the issues presented in the above order.

## FIRST

An examination of this record discloses that Denver is correct in its assertion that our prior decision above mentioned governs in determining the validity of plaintiffs' second through seventh claims. Though they were not parties to that action the issues involved are *stare decisis*.

Plaintiffs urge, however, that in the prior decision we failed to fully treat the alleged applicability of the 14th Amendment of the Federal Constitution to this problem. In addition it is said that the issue of reapportionment of the Colorado legislature (now pending in this court in *Stein v. The General Assembly,* No. 20,240, and in

*Lisco, et al., v. McNichols* and *Myrick, et al., v. General Assembly,* Nos. 7501 and 7637, combined actions now pending in the United States District Court for Colorado), is now involved in this action. They urge that specific rulings be made on each of these points in relation to the same issues decided in the prior case.

The gist of plaintiffs' complaint, both in the trial court and here, is stated at page 7 of their answer brief to be that:

"The developed portion of the tri-counties (Arapahoe, Adams, and Jefferson which completely surround Denver) lies in narrow belts closely adjacent to Denver. In those areas are intensive housing, substantial industrial and commercial development, and many businesses. Basically, these areas are the tax base of the surrounding counties.

"Urbanization places ever heavier burdens upon the counties, burdens which may be met only from taxes derived from that base. It is that very urbanized base which Denver seeks to absorb. Such a development is neither economically nor politically sound and, when it is implemented by a set of legal provisions adopted without proper legislative representation of the victims upon the basis of a State Constitutional provisions (sic) (referring to Article XX Colo. Const.) which is, in its very terms, a direction violation of the essence of equal protection of the laws, the policy is a deadly and an unconstitutional one." (Portions in parenthesis added.)

The question of legislative reapportionment was neither raised nor considered in the trial court and it will not be ruled upon here, even if we deemed it to have some applicability, which we do not. The difficulty with plaintiffs' position is that the problem to which they seek a judicial solution is a legislative and political one. The people adopted Article XX of the Constitution, under which Denver is granted a special status as both a city and county. Legislatures elected

by the people, before the current struggle over reapportionment arose, enacted the various statutes the applicability of which to the present problem is either urged or objected to by plaintiffs. And, we add, no statute so questioned is shown to have been enacted by an unconstitutional or de facto legislature. Hence, we fail to see how the issue of legislative reapportionment, as now before us in a different action, can have any bearing on this action. Nor are we persuaded that the basis of our earlier decision, the effect of which is to nullify plaintiffs' second through seventh claims, should be re-examined.

As noted in *Commissioners v. Denver*, supra, the 14th Amendment to the Federal Constitution can afford no relief to plaintiffs, for they have no vested rights in the existence of Arapahoe County. The county is a mere adjunct of the state for administrative purposes. The people of the entire state have been and are free to increase or decrease its size or abolish it altogether by a constitutional amendment or proper legislative act consistent with Article XIV, Sec. 3, of the Colorado Constitution.

The issues involved in claims second through seventh are foreclosed by that decision and the trial court was in error in entering judgment thereon although it should be stated that the opinion therein was not available to the trial court at the time of judgment in this action.

## SECOND

As to the injunctive relief afforded plaintiffs by the trial court; having concluded that no grounds exist for the granting thereof, it should be forthwith vacated.

## THIRD

The next question is whether the trial court erred in denying Denver's motion to dismiss on the ground that none of plaintiffs are in fact aggrieved persons under

the statute, qualified to challenge in this annexation proceeding.

We have here a parcel of land owned and used by Robinson for industrial purposes. No persons reside thereon and Robinson petitioned for its annexation to Denver which the city accepted under existing laws.

The named individual plaintiffs are residents, electors and taxpayers of Arapahoe County but do not reside in the subject area, they sue individually and as a class in behalf of others similarly situated; they and the school district own no property in the annexed territory; the Board of County Commissioners alleges that it exercises "powers politic and corporate" in the affected area and that it "is the owner of a road, street, and public way in the area sought to be annexed * * * "; the assessor and the treasurer have and assert no direct interest of any kind in the land. Thus, the individuals' interest is solely that of the general public; the school district, that of a tax-supported municipal corporation; the County Commissioners as owners of public rights-of-way on and adjoining the land and as public officials charged with the duty of administering general county affairs and adopting tax levies. The assessor and treasurer are officials who levy and collect taxes pursuant to law.

The statute states in pertinent part:

"*Any person aggrieved* by *any* annexation proceedings had under this article may apply at *any* time within ninety days after the effective date of the approving ordinance to the county court of the county *in which his land is situated* for a hearing and for appropriate relief. * * * ." C.R.S. '53, 139-11-6. (Emphasis supplied.)

This statute in specifying the class of persons who may be "aggrieved" thereunder requires such party to bring an action in the county in which his land is situated and does not require that he be a landowner in

the area of land being annexed. Thus, in *Tanner v. Boulder,* 151 Colo. 283, 377 P. (2d) 945, it was held that a resident and taxpayer of the City of Boulder had the right to challenge an annexation in the Boulder County Court where the annexation ordinance both annexed and zoned at one time, and where it was alleged that the plaintiff was aggrieved and that the ordinance violated the Boulder City Charter. In that case the taxpayer brought his action in "the county court of the county in which his land is situated."

It is basic law that when a statute creates a cause of action and designates those who may sue thereunder, none except the persons so designated may bring such an action. *Avery v. County Court of Gilpin County,* 126 Colo. 421, 250 P. (2d) 122 (1952); 39 Am. Jur. 858, Parties, Sec. 9. A proper party plaintiff is essential to confer jurisdiction on the court. *Avery,* supra.

The problem here, however, is who is in fact a "person aggrieved"? Does it include any person except those who reside on or own land in the area to be annexed or those taxpayers and citizens who allege they are directly affected and who reside in an *incorporated area* to which the land is being annexed?

The general rule is that an individual who is a resident of *an unincorporated area,* but not of the particular tract to be detached therefrom by annexation proceedings, is not such a person. The reason is that such person does not suffer, by reason of the annexation, a detriment peculiar to himself as distinguished from the general detriment theoretically shared by all property owners in the governmental unit. See for example *Markos v. Cain,* (Ohio), 154 N.E. (2d) 196 (1955).

Also, according to 13 A.L.R. (2d) 1279 et seq. many jurisdictions consider such an attack by private persons to be an attack on the corporate existence itself and limit attack to *quo warranto* proceedings.

We point out that one trouble with limiting a chal-

lenge to *quo warranto* in circumstances such as that before us is that if the attorney general under either his common law or statutory powers has the right to challenge but fails or refuses to do so, complete defiance of statutory requirements could occur. No such matter affecting both a public and private interest should be left in that posture by the courts if a proper remedy is available. Hence, even if *quo warranto* proceedings by the attorney general is the relief to which these individual taxpayers are relegated, it does not necessarily follow that the same rule should apply to the county or the school district.

As to the county, it makes general allegations of injury and specifically asserts it owns right-of-ways within the area to be annexed. C.R.S. '53, 36-1-1 expressly authorizes counties to sue or be sued.

In *De Kalb County v. City of Atlanta,* 132 Ga. 727, 65 S.E. 72 (1909), where the factual situation was different but where the question arose as to whether a county was a proper party plaintiff where a suit was filed to resist altering county lines, it was said:

" * * * If a county is a body corporate, with power to sue, no express limitation is put upon the class of subject-matters in respect to which that power can be exercised. If the county has a right which it becomes essential to enforce by process of law, or a wrong is being done which will be detrimental to the county and its interests, why should it not be allowed to enforce the right or seek a remedy against the wrong? The county of De Kalb now has jurisdiction over the territory involved in this controversy. From the property therein taxes are collected, and it furnishes county revenue. It exercises dominion over the roads and the working of them and may collect road tax, if the alternative road law is or should be put in force. If there are persons residing in that territory exercising any business which requires a county license, this payment

furnishes a further source of revenue. Jurors are drawn from citizens there. It forms now an integral part of De Kalb county, subject to its management, control, and any revenue or benefit derivable therefrom. It cannot be that a county must submit to have such portion of its territory unlawfully taken from it and transferred to another county, without being able to contest the legality of the proceeding. The county of De Kalb could bring the suit. If a county can sue and be sued, who shall determine whether a suit shall be brought or resisted, if not the official or officials having general charge of county matters?"

We hold, therefore, that a county has such an interest in the detachment of its territory as to be a "person aggrieved" under the statute where it is charged that the annexation is invalid.

What has been said as to the rights of counties applies with equal force to a school district, even though it has fewer sticks in its bundle of rights than a county. It at least has two major grounds of grievance, viz., that an illegal annexation will seriously impair both its tax base and the interests of its students. Uncertainty and confusion attendant upon description of its school district boundaries by detachment of a part thereof, even if it is not land owned by the school district, and the consequent deprivation of part of its tax base, should not be allowed if the statute can reasonably be interpreted to include such a public body. We see nothing in 139-11-6 precluding a school district, obligated to carry on its functions within the affected county, from being a "person aggrieved" by detachment of a part of its district's territory. We hold it to be a proper party in the instant action. See *City of Oshkosh v. Winnebago County School Committee,* 9 Wis. (2d) 32, 100 N.W. (2d) 374 (1960).

The judgment is reversed and the cause remanded with directions to the trial court to vacate the mandatory injunction entered therein; to dismiss plaintiffs' claims

second through eighth; to grant defendants' motion to dismiss as parties plaintiff all of the individual plaintiffs as well as the assessor and the treasurer; and to proceed expeditiously to trial on the merits of plaintiffs' remaining first claim for relief, permitting the parties to amend their pleadings as they may be advised.

MR. CHIEF JUSTICE FRANTZ concurs in part and dissents in part.

MR. JUSTICE MOORE not participating.

MR. JUSTICE McWILLIAMS concurs in part and dissents in part.

MR. CHIEF JUSTICE FRANTZ concurring in part and dissenting in part:

Language of a statute which is general and purports to give generally a right to seek relief should not, under the guise of interpretation, be reduced to allowing relief only in a very restricted area. And yet I fear that the majority opinion accomplishes this unwarranted end result. For what has been granted legislatively to the generality of persons interested in an annexation ordinance is compressed to the point where a very limited few may seek relief.

I agree with the majority in its view that the County and the School District are aggrieved entities within the meaning of C.R.S. '53, 139-11-6. See *Village of Brown Deer v. City of Milwaukee,* 274 Wis. 50, 79 N.W. (2d) 340; *Town of Griffing v. City of Port Arthur,* 36 S.W. (2d) 593 (Tex. Civ. App.); *City of East St. Louis v. Touchette,* 14 Ill. (2d) 243, 150 N.E. (2d) 178. But I am unable to agree that resident electors and taxpayers of the county, who will be injured in that a substantial and valuable industry and industrial site is removed from the tax rolls of Arapahoe County, so that the tax base of such county is greatly changed to the detriment of these individuals, are not aggrieved persons within the terms of the statute.

To restrict the application of the statute where the language employed is so broad and general is contrary to the intent of the Act as expressed by the legislature, and is tantamount to an amendment of the statute by judicial act — an injudicious and prohibited function.

C.R.S. '53, 139-11-1, provides that:

"Territory in the State of Colorado may be annexed to a city, city and county, or incporated town, *provided* the territory is eligible therefor, as set out in section 139-11-2, and *provided* the procedures set out in sections 139-11-3 and 139-11-4 shall have been complied with." (Emphasis supplied.)

It should be noted that two conditions are prescribed in order to accomplish annexation: (1) the territory must be eligible, and (2) certain procedures must be followed.

Only the following from C.R.S. '53, 139-11-2, need be considered in this case:

"Territory shall be eligible for annexation if such territory:

\* \* \*

" (2) Abuts upon or is contiguous to the city, city and county, or incorporated town to which it is proposed to be annexed in a manner which will afford reasonable ingress and degress thereto, provided that not less than one sixth of the aggregate external boundaries of the territory proposed to be annexed must coincide with existing boundaries of the annexing municipality."

Whether there is the necessary contiguity is a question of fact. If, as a matter of fact, the required contiguity is absent, the property proposed to be annexed is ineligible for purposes of attachment to the municipality.

An annexation of ineligible land is *void. City of Denver v. Coulehan,* 20 Colo. 471, 39 Pac. 425; *Sharkey v. City of Butte,* 52 Mont. 16, 155 Pac. 266. An attempt to annex property ineligible because of the lack of the necessary statutory contiguity rendered annexation "pro-

ceedings * * * void from the beginning." *Sharkey v. City of Butte,* supra.

Beyond doubt, we are dealing with an allegedly *void* annexation, not one merely voidable because of some formal lack in the annexation proceedings. May resident electors and taxpayers of the county from which the land is to be disconnected attack a void annexation? C.R.S. '53, 139-11-6, allows *"any person* aggrieved by *any* annexation proceedings *had under this article"* to apply to the county court "for a hearing and appropriate relief." Such action must be taken "within ninety days after the effective date of the approving ordinance."

The statute does not provide, as the majority holds, that *only* a person may sue who is aggrieved in a manner "peculiar to himself as distinguished from the general detriment theoretically shared by all property owners in the governmental unit." I contend that the majority view thus expressed is not interpretation; it is overt judicial legislation.

The statute affording "any person aggrieved by any annexation proceedings had under this article" the right to seek "appropriate relief" cannot be equated with giving relief only to those who suffer in a manner different from others, or from 100 others, or 1000 others, or from the whole populace of the county. If a person is adversely affected by an annexation, be it greatly or to a lesser degree, he is a person aggrieved; "any person aggrieved" has that broad a meaning. *Hunt v. City of Laramie,* 26 Wyo. 160, 181 Pac. 137. To reduce that meaning to something greatly less is not our function or prerogative, but is only for the legislature to do.

Annexation statutes are so varied by reason of differences in language used to convey legislative intent that precedent for our problem is difficult to come by. The best that can be achieved is approximation to our statutes and decisions construing such statutes.

It was held in *State v. Village of Mound,* 234 Minn. 531, 48 N.W. (2d) 855, that ineligibility of land sought to

be annexed, because of the lack of the necessary contiguity, could be contested by individuals through a statutory type of quo warranto proceedings. The individuals lived in an unincorporated area known as Spring Park. A part of this area was made up of an industrial site which formed contiguity with the annexing town by a railroad right of way. The individuals contesting the annexation lived outside the territory to be annexed but in Spring Park. The court spoke about "the party aggrieved" by the annexation and held that the annexation was void for lack of the necessary contiguity. The court thereupon held that the individuals properly could bring the action.

Throwing some light on our case is the opinion in *In Re Annexation of Three Portions of Hazle Township,* 183 Pa. Super. 212, 130 A. (2d) 230. The court was called upon to decide who would be "any person aggrieved by" the annexation ordinance in that case. The annexation statute of Pennsylvania does require the Commissioners to consider a number of factors, among them the assessed valuation of the township and of the territory to be annexed, and how the annexation would affect the remainder of the territory, in making their findings. It was held that the township and individual taxpayers (although not residing on the property annexed) were aggrieved persons because annexation would increase the burden of tax obligation in proportion to the loss suffered by reason of the annexation. Quoting from another case, the court adopted this language:

" 'To amputate a sizable section of Montgomery Township is an operation in which all taxpayers of the township are interested, for to some extent it affects them all."

Other cases which throw some light on this question are: *Village of Brown Deer v. City of Milwaukee,* supra; *Gorman v. City of Phoenix,* 70 Ariz. 59, 216 P. (2d) 400; *Town of Griffing Park v. City of Port Arthur,* supra.

Quo warranto by the Attorney General is an improper

remedy. During the ninety days after the passage of the approving ordinance, aggrieved persons may seek such appropriate relief from the county court as the situation warrants. It is a general rule that, where a statute creates a right and the remedy to enforce that right, such remedy is exclusive, at least until that remedy is exhausted. See 1 C.J.S. 974, §6b, and *People v. South Platte District,* 139 Colo. 503, 343 P. (2d) 812.

Section 139-11-6 places jurisdiction in the county court to determine whether a person has been aggrieved by an annexation. I seriously doubt that the county court has jurisdiction in quo warranto proceedings. It occurs to me that the Attorney General could not proceed in quo warranto until after the expiration of ninety days from the date of the approving ordinance, since during that time there is an exclusive remedy to test the validity of an annexation. The suggestion of relief by way of quo warranto in the majority opinion is, in my view, inappropriate; at best, it could have application only after the expiration of the ninety-day period to which I have alluded.

To the extent that the views expressed above are in disagreement with the majority, I dissent.

MR. JUSTICE McWILLIAMS concurring in part and dissenting in part:

I agree with that portion of the majority opinion which holds that under *Board of County Commissioners of Jefferson County, et al., v. City and County of Denver, et al.,* 150 Colo. 198, 372 P. (2d) 152 the purported "final" judgment entered by the trial court in favor of the plaintiffs on their claims numbered two through eight must be reversed and the matter remanded with directions to dismiss those particular claims, but disassociate myself from the balance of the opinion, which I regard as not only dictum, but *erroneous* dictum! To demonstrate my point I would briefly recite the chronology of events as they have occurred in the instant matter.

In their complaint the plaintiffs set forth eight separate claims for relief, each seeking the invalidation of a completed annexation. The status of the first claim is that the defendants' motion to dismiss the same was denied, the defendants have filed an answer which placed in issue certain factual allegations made in the first claim, the matter has not yet been tried, and needless to say no final judgment has been entered in connection therewith.

In connection with claims numbered two through eight, the trial court not only denied all motions attacking these claims but went further and entered a purported "final" judgment under Rule 54 (b) R.C.P. Colo. in favor of the plaintiffs and against all defendants on claims two through eight. All of these claims are said to present matters of law only, as opposed to the first claim, which with the answer thereto, poses a disputed issue of fact.

By the present writ of error the defendants seek reversal of the final judgment thus entered on claims two through eight, and I concur that this judgment must be reversed under *Board of County Commissioners of Jefferson County v. City and County of Denver,* supra, which incidentally was decided subsequent to the entry of judgment in this action by the trial court.

In my view reversal of the judgment entered on claims two through eight is all that can be decided by the present writ of error, and from a procedural standpoint I fail to perceive how the issue of whether the trial court was correct in denying defendants' motion to dismiss the first claim, can be reviewed by us at this time under this writ of error. Hence, my firm belief that the rather all-inclusive dissertation as to who or what constitutes an "aggrieved" person under C.R.S. '53, 139-11-6 is dictum.

In support of my further conviction that the dictum is erroneous, see by way of example, 13 A.L.R. (2d), pp. 1279-1305; *School District No. 38 v. Rural High School*

District No. 6, 116 Kan. 40, 225 Pac. 732; *Smith v. City. of Emporia,* 168 Kan. 187, 211 P. (2d) 101; *Markos v. Cain,* (Ohio) 154 N.E. (2d) 196; *McClintock v. Cain,* (Ohio) 142 N.E. (2d) 296; and *Rice Consolidated Common School District No. 13 v. City of Tyler,* (Texas) 219 S.W. (2d) 558.

Needless to say, the "error" which I perceive in this dictum is of a radically different nature than the alleged "error" pointed out by Mr. Justice Frantz.