No. 20743.

CARROLL C. ELKINS, ET AL., AND THE BOARD OF
COUNTY COMMISSIONERS OF ARAPAHOE COUNTY *v.*
THE CITY AND COUNTY OF DENVER, ET AL.
(402 P.2d 617)

Decided May 17, 1965.

Harry E. Carleno, Robert R. Gallagher, Jr., for plaintiffs in error, Carroll C. Elkins, Kerstein E. Elkins, Rachel G. Webb and Bob G. Webb.

Richard D. Dittemore, for plaintiff in error Board of County Commissioners.

Max P. Zall, Thomas G. Roche, for defendant in error The City and County of Denver.

Donaldson, Hoffman & Goldstein, for defendants in error William J. Suitts, The A. L. Johnson Company, Inc., Suitts Family Investment Company, 214 Corporation, Colorado Title Service Company, Colorado Mortgage Company and Henry C. Van Schaack, Jr.

Dawson, Nagel, Sherman & Howard, Michael Reidy, Raymond J. Turner, amici curiae.

*En Banc.*

Mr. Justice Moore delivered the opinion of the Court.

WE will refer to plaintiffs in error as plaintiffs or by name, and to the defendants in error as defendants.

On June 5, 1961, a "Petition for Annexation," and a plat of certain unincorporated land in Arapahoe county comprising 1,040 acres known as "Fort Logan Reservation," were filed with the city council of the City and County of Denver. On June 12, 1961, the council, by resolution, determined that the petition met the requirements of C.R.S. '53, 139-11-1, et seq., and caused the notices to be published as required by the applicable statute (C.R.S. '53, 139-11-4).

On July 31, 1961, the city council adopted an ordinance annexing the territory to the City and County of Denver. The effective date of this ordinance was August 5, 1961. On November 2, 1961, the plaintiffs brought an action in the county court of Arapahoe county seeking nullification of the annexation proceedings. The action was commenced under the provisions of C.R.S. '53, 139-11-6, which in pertinent part reads as follows:

"Any person aggrieved by any annexation proceedings had under this article, may apply at any time within ninety days after the effective date of the approving ordinance to the county court of the county in which his land is situated for a hearing and appropriate relief. * * *"

The original complaint contained nine separately stated claims for relief but during the course of the proceedings the plaintiffs voluntarily dismissed all of them except the following:

a. Less than 1/6th of the aggregate external boundaries of the territory annexed coincided with the existing boundaries of the City and County of Denver.

b. The petition for annexation originally filed with the City and County of Denver did not contain the signatures of owners of more than 50% of the subject property who also comprised the majority of the landowners residing in the territory at the time of filing.

c. The annexation would remove territory from

School Districts Nos. 2 and 75 of Arapahoe County and make it part of Denver to the detriment of the taxpayers, electors and residents of said school districts, including plaintiffs, who would sustain increased tax burdens upon their property in order to maintain the said districts and their functions.

The defendant City and County of Denver filed an answer in which the material facts alleged in the complaint were denied, and issue was taken with the propositions of law upon which the complaint was based.

Although the argument of the defendants is presented under nine separate captions we find it necessary to consider only three of them which we quote from the Summary of Argument as follows:

"3. Under the facts in this case Arapahoe county does not qualify as 'any person aggrieved.'"

"7. Plaintiffs did not follow the statutory remedy provided in C. R. S. 139-11-4." (139-10-4 C.R.S. 1963).

"8. The interest of William J. Suitts in the property for which he signed contained all of the incidents of ownership. The fact that title was not recorded in his name is immaterial under the annexation statute."

The facts with reference to the eligibility of William J. Suitts to sign the petition for annexation are as follows: On or about May 10, 1960, he entered into a contract designated "Option Contract" with A. L. Johnson Co., Inc., providing for the purchase of a portion of the territory included within the annexation proceedings. The instrument called for the payment by Suitt of $3,100.00 per acre for a total of 120 acres. He was to be responsible for all development and platting of said acreage and all utilities were to be installed at his expense. All development work customarily required to be done in a residential subdivision was to be completed and paid for by him, and he agreed to plat the land for housing development. The "Option Contract" further provided that Suitts could acquire title to lots contained in the total area, in amounts of not less than ten acres

at any one time, by making payments to A. L. Johnson Co. at the aforesaid acreage price at a minimum of $1,200.00 per lot. A. L. Johnson Co. agreed to deliver to Suitts, upon request, a title policy to the entire acreage involved, but there was no agreement to provide individual title policies on each lot. It was further provided that if the development of the area did not proceed in an orderly and satisfactory manner, A. L. Johnson Co., on thirty days written notice could cancel the agreement and all improved work theretofore done by Suitts on the land to which no deed had been issued would accrue to A. L. Johnson Co. The agreement contained an arbitration clause which would govern in the event that Suitts should contend that any cancellation by A. L. Johnson Co. was unjustified. At the time of signing the petition for annexation Suitts had not acquired title to any of the land.

The foregoing facts are all that were offered to support the allegation of the petition that "Your petitioners are the sole and absolute owners in fee simple of over 50% of the area of said unincorporated territory," and the further allegation that with the exception of certain owners who are exempt from taxation "all your other petitioners are the owners in fee simple of real property in the territory proposed to be annexed, who have, in the next preceding calendar year, become liable for a property tax thereon."

Upon the pertinent issues the trial court ruled as follows:

"2. The Plaintiff Board of County Commissioners of Arapahoe County is not an aggrieved person within the meaning of the said section of the statute merely by reason of the detachment of some area from the territorial limits of Arapahoe County and its annexation to Denver.

"3. The County Commissioners of Arapahoe County failed to sustain the burden of proof upon them that any property owned by the County in a proprietary

capacity was adversely affected in any respect whatsoever by the annexation of Fort Logan Reservation."

The court did not specifically determine whether plaintiffs were required to exhaust the remedies provided in C.R.S. 1963, 139-10-4, prior to the assertion of any rights under C.R.S. 1963, 139-10-6. The court ruled that Suitts was an owner within the meaning of the statute and was qualified to become a petitioner. The annexation proceedings were upheld and appropriate judgment was entered.

On the question of whether the County of Arapahoe could qualify as a "person aggrieved" under C.R.S. '53, 139-11-6, it is sufficient to direct attention to the last expression of this court on that issue appearing in *Denver v. Miller*, 151 Colo. 444, 379 P.2d 169, where we find the following pertinent statement:

"We hold, therefore, that a county has such an interest in the detachment of its territory as to be a 'person aggrieved' under the statute where it is charged that the annexation is invalid."

Counsel for the defendants argue at considerable length that plaintiffs failed to exhaust the administrative remedies outlined in C.R.S. '53, 139-11-4, in that they did not cause any counter petition to be filed with the clerk of the council of the City and County of Denver; and that the plaintiffs made no appearance pursuant to the notice which was published by the city council concerning the filing of said annexation petition; and that they actually took no steps to prevent adoption of the annexation ordinance by the council of the City and County of Denver. It is argued that, notwithstanding the statute, C.R.S. '53, 139-11-6, which provides:

"Any person aggrieved by any annexation proceedings had under this article may apply at any time within ninety days after the effective date of the approving ordinance to the county court of the county in which his land is situated for a hearing and appropriate relief," a failure to object to the passage of the ordinance oper-

ates to bar an action based exclusively upon said statute. With this contention we cannot agree.

We hold that the statute upon which plaintiffs claim the right to bring the action is in no manner limited by the other measures which might have been resorted to by persons opposing the proposed annexation. Indeed, it is clear that by filing a counter petition, and fully exhausting the remedy of putting the question of annexation to a vote of qualified electors, one might not be able to conclude the so-called "administrative remedies" until ninety days had expired following "the effective date of the approving ordinance." The right of "any person aggrieved" to challenge the validity of annexation proceedings is limited only by the terms of 139-10-6, *supra.*

Upon the crucial question as to whether Suitts was an "owner" of property within the area to be annexed, it is admitted that the inclusion of his name on the petition is necessary in order to give the petition validity. Unless the acreage which he claims was "owned" by him is included, there would be a substantial shortage in the requirement that more than 50% of the land to be included in the annexation must be owned by those petitioners who sought annexation. C.R.S. 1963, 139-10-8 (adopted in 1957) provides:

"For the purposes of this article 'landowners,' as used in section 139-10-3, shall mean owners in fee of real property in the territory proposed to be annexed who have in the next preceding calendar year become liable for a property tax thereon; * * *"

We have carefully read the contract entered into between Suitts and A. L. Johnson Co. and find nothing therein which purports to qualify Suitts as an owner "in fee of real property in the territory proposed to be annexed." At the time he signed the petition he was the holder of an option to purchase 120 acres of land. He was under no obligation to exercise that option and could have abandoned the development at any time.

Actually he was not the "owner in fee" of a single lot in the entire tract of 120 acres at the time he affixed his name to the petition in which it was asserted that he was the "sole and absolute owner in fee simple" of the said 120 acres.

█ The plaintiffs established without question that the owners of more than 50% of the area proposed to be annexed had not joined in seeking the annexation. *Town of Greenwood Village v. Heckendorf*, 126 Colo. 180, 247 P.2d 678. *Town of Sheridan v. Nesbitt*, 123 Colo. 121, 227 P.2d 1000. The ordinance of the city council, purporting to annex to the City and County of Denver the 1040 acres included in the petition involved in this case, is void.

The judgment accordingly is reversed.

MR. JUSTICE MCWILLIAMS dissents.

MR. JUSTICE MCWILLIAMS dissenting:

I do not agree that either the County of Arapahoe or its Board of County Commissioners is an "aggrieved" person under C.R.S. '53, 139-11-6 nor am I of the view that such was the *holding* of this Court in *Denver v. Miller*, 151 Colo. 444, 379 P.2d 169. Any pronouncement to that effect appearing in *Denver v. Miller, supra,* I regarded then, as now, to be pure dictum, and erroneous dictum at that! For my thoughts on this matter see my concurring opinion in *Denver v. Miller, supra.* Finally, this "dictum" in *Denver v. Miller, supra,* which according to the majority governs the instant case, I regard to be at odds with our *holding* in *Board of County Commissioners of Jefferson County v. Denver,* 150 Colo. 198, 372 P.2d 152.